## EX PARTE J. B. WARFIELD.

No. 1693. Decided April 26, 1899.

**1. Habeas Corpus—Contempt—Jurisdiction of Court of Criminal Appeals.**

There is no question that the Court of Criminal Appeals has authority to issue writs of habeas corpus on account of contempt proceedings before district courts in the trial of civil cases.

**2. Same.**

The Court of Criminal Appeals will only interfere by habeas corpus in contempt cases where it clearly appears that the action of the lower tribunal punishing for contempt was without authority of law; was absolutely void, because said court had no jurisdiction of the subject matter or the parties, or was wholly without power to make the order in the particular case punishing for the supposed contempt.

**3. Same—Contempt for Disobedience of Injunction.**

Whenever a court has authority to grant a writ of injunction, no matter what irregularities may attend its issuance, or however erroneously it may have been granted, as long as the injunction exists undissolved, it must be obeyed, and, for a violation thereof, the party will be held in contempt.

**4. Injunction—Scope and Subject Matter for.**

Formerly the rule was that courts could only interfere by injunction where some property right or interest was involved, but it now seems the writ will be applied in an innumerable variety of cases in which really no property right is involved.

And where it is doubtful whether an action is one at law or of equitable cognizance, as a general rule, if the case is brought in an equity court, the chancellor has the same power to issue the writ as if there was no question of the jurisdiction; and as long as the writ continues it must be obeyed, and its disobedience is subject matter for contempt proceedings. In Texas, where law and equity are blended in one and the same jurisdiction, the writ of injunction will, a fortiori, be authorized in doubtful cases.

### 5. Same—Alienation of a Wife's Affections.

Where an action has been brought by a husband for damages for the partial alienation of his wife's affections and to preserve the marital relations and rehabilitate her affections, an injunction is the proper remedy to restrain the defendant, who is exercising undue influence over the wife, and who, if not restrained, will likely entirely corrupt and lead her astray; and to prevent such consequences, defendant may be enjoined from writing to, speaking, or talking with her, or visiting the house where the wife is staying.

### 6. Same—Inalienable Rights—Freedom of Speech.

A citizen's inalienable rights of locomotion and association are limited to the extent that he must so use his own as not to abuse another's rights, and there is no inconsistency between the right of freedom of speech and the right to have protected and preserved the integrity of the marital relation. It is the duty of the courts to protect both, as far as they can be construed in harmony.

### 7. Same.

In an action for damages for a partial alienation of a wife's affections, where a writ of injunction has been issued to restrain defendant from visiting and speaking or writing to the wife, because he could not be trusted in her society, or to speak with her, it would be a violation of the injunction for defendant to have conversation with her, even though it was not shown that such conversation was of a character to persuade or lead her away from her husband, the plaintiff.

### 8. Same.

Where the action of the lower court in granting a writ of injunction is of doubtful validity as to the subject matter enjoined, that is, whether it may or may not be void, the court will not feel inclined to interfere.

FROM Dallas County.

Original application for a writ of habeas corpus to be released from custody for a contempt of court on account of disobedience of a writ of injunction.

The opinion states the case.

*Crawford & Crawford*, for relator.—When the court has no jurisdiction or authority to grant the injunction the order granting the writ is void, and the party may disregard it. The party committed for contempt for violating an order which the court had no power to make, will be discharged on habeas corpus. Church on Hab. Corp., sec. 331; Ex Parte Rowland, 104 U. S., 604; Ex Parte Sawyer, 124 U. S., 200.

Jurisdiction is of two kinds: (1) the power to hear and determine the particular matter; (2) the power to render the particular judgment which was rendered. If either of these two essential matters are lacking the judgment is fatally defective, and a citizen committed for contempt will be discharged on habeas corpus. Ex Parte Degener, 30 Texas Crim. App., 566.

The case last cited reviews a great many authorities, and holds that a court can not punish by fine and imprisonment an act innocent in itself, and this upon the broad ground that the act complained of must in fact

constitute a contempt. If it does not, the court is without jurisdiction to render the judgment imposing a fine and imprisonment. 30 Texas Crim. App., 578.

The same doctrine is stated in Church on Habeas Corpus, section 323, where the Degener Case is commended and the rule again announced that jurisdiction is not obtained by the mere assertion of it.

The Degener Case is affirmed by this court in Ex Parte Taylor. Indeed the Taylor Case goes further; there the relator was discharged because the statement of facts disproved the charge of contempt, and this court justly held that the district court was without jurisdiction to punish for contempt an act which the record clearly showed that the relator did not commit. Ex Parte Taylor, 34 Texas Crim. Rep., 591.

Courts of equity have no power to restrain by injunction the liberty of speech or of the press. Life Assn. v. Boogher, 4 Cent. Law Jour., 40.

In this case Judge Gautt says: "If it be said that the right to speak, write, or print, secured by the Constitution to everyone, can not be construed to mean a license to wantonly injure, and that by the jurisdiction claimed it is only suspended until it can be determined judicially whether the exercise of it in the particular case be allowable, our answer is that we have no power to suspend that right for a moment, or for any purpose. The sovereign power has forbidden any instrumentality of the government it has instituted to limit or restrain this right, except by the fear of the penalty, civil or criminal, which may wait on its abuse." * * * The matter is too plain for detailed illustration. 4 Cent. Law Jour., 41 (bottom page, sec. C).

The authorities all agree that there shall be no censor of the press. There can be no licenser of the press in this country. Liberty of the press, says DeLome, consists in this: "That neither courts of justice nor any other judges whatever are authorized to take notice of writings intended for the press, but are confined to those which are actually printed." Cool. Const. Lim., 6 ed., 516.

The constitutional provision was intended to prevent all such previous restraints upon publications as have been practiced by other governments, and in early times here. Conn v. Blanding, 3 Pick., 313; Cool. Const. Lim., 517.

Blackstone says: "Liberty of the press consists in laying no previous restraints upon publications, and not in freedom from censure for criminal matter when published." Story Const., 4 ed., sec. 1884.

"There can be no licenser of the press. Publish as you please in the first instance, without control, but you are amenable both to the community and the individual if you proceed to unwarrantable lengths." Cool. Const. Lim., 6 ed., 528, note 1; Republica v. Dennie, 2 Am. Dec., 402.

No case can be found in this country where the citizen has been restrained by injunction from speaking or publishing his sentiments or opinions upon any subject whatever.

"The utmost extent to which courts of equity have gone in restraining any publication by injunction has been in the protection of the

rights of property in the book or letters sought to be published. They have never assumed, since the destruction of the Court of Star Chamber, any publication upon the ground that it tends to the degradation or injury to the reputation or business of the plaintiff who seeks relief against such publication. Matters of this sort are not within the jurisdiction of courts of equity, but are cognizable in a civil or criminal suit at law." 2 Storey's Eq., 10 ed., sec. 948a.

We respectfully submit that if the Legislature should so amend the law as to expressly authorize the judges of the district courts to grant injunctions against the speaking or writing of any matter which in their opinion might tend to alienate the wife's affections from her husband, the courts would declare it void. There is no such power in any department of the government. 4 Cent. Law Jour., 42.

In Montague v. Dudman, 2 Vesey Sr., 396, Lord Chancellor Hardwick said: "I will go by Littleton's rule, that it is a good argument an action lies not, because one was never brought. I never knew a bill of this kind, and therefore will not make the precedent." 35 Am. St. Rep., 670.

The right to the enjoyment of personal liberty is just as sacred as the freedom of speech and as carefully guaranteed by the Constitution. Blackstone says, "this consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's inclination may direct, without imprisonment or restraint, unless by due course of law." 1 Blackst., 134.

"If the Legislature may dictate who our associates may be, then what becomes of the constitutional protection to personal liberty? Obviously there is no difference in point of legal principle between a legislative act which forbids certain associations and one which commands certain associations. We deny the power of any Legislature or legislative body in this country to choose for our citizens whom their associates shall be." Ex Parte Smith, 36 S. W. Rep., 628; City of St. Louis v. Roche, 31 S. W. Rep., 915; Pinkerton v. Verberg, 78 Mich., 573; concurring opinion of Sherwood, Justice, in Fitz Case, 53 Mo., 404; Ex Parte McCarver, 39 Texas Crim. App., 448; Cool. Const. Lim., 6 ed., 413; 13 Am. and Eng. Enc. of Law, title "Liberty," 505, et seq.

In the argument it was admitted by the State that there was no precedent for this proceeding. The admission applies as well to the granting of the injunction as to the fine and imprisonment for its violation. This court is asked to make a precedent and restrain the citizen in the exercise and enjoyment of rights and privileges protected by the Constitution.

We take it that in any case where a party claims a right to restrain a citizen of his liberty it devolves upon him to make out a clear case, bringing himself within some rule of law permitting the restraint. People v. McAlister, 19 Mich., 216.

Those who claim the right to do so ought to be able to show a specific authority therefor instead of calling upon others to show how and where the authority is negatived. Cool. Const. Lim., 6 ed., 484.

The respondent has no remedy except the writ of habeas corpus. If he is unlawfully restrained he can be enlarged by no other process.

Counsel also filed an able brief on motion for rehearing.

*George H. Plowman* and *Robt. A. John,* Assistant Attorney-General, for respondent.—Every person shall be at liberty to speak, write, or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press. In prosecutions for the publication of papers investigating the conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence. And in all indictments for libels the jury shall have the right to determine the law and the facts under the direction of the court, as in other cases. Const. of 1876, art. 1, sec. 8; Sayles' Ann. Stats., p. 50.

A conviction for contempt authorized by law, is a commitment in execution, and the judgment is not subject to revision nor can it be called in question by writ of habeas corpus. Floyd v. State, 7 Texas, 215; Jordan v. State, 14 Texas, 441; Holman v. Mayor of Austin, 34 Texas, 670; Casey v. State, 25 Texas, 380, by Bell, J.; 1 Thomp. on Trials, sec. 141.

Judges of the district and county courts may, either in term time or vacation, grant writs of injunction, returnable to said courts, in the following cases: 1. Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant. 2. Where, pending litigation, it shall be made to appear that a party is doing some act respecting the subject of litigation, or threatens or is about to do some act, or is procuring or suffering the same to be done in violation of the rights of the applicant, which act would tend to render judgment ineffectual. 3. In all other cases where the applicant for such writ may show himself entitled thereto under the principles of equity. Rev. Stats., art. 2989.

An injunction which forbids defendant from corresponding in any manner with complainant's customers is violated if he writes to such customers, even though in answer to letters from such customers. Loven v. People (Ill. Sup.), 42 N. E. Rep., 82.

Sufficiency of complaint in habeas corpus can not be determined. Ex Parte Beverly, 31 S. W. Rep., 645.

One committed for contempt, on habeas corpus, order can not be attacked if the court had power to make it in any supposable circumstance which might arise in the progress of the cause. In re Rosenberg (Wis.), 63 N. W. Rep., 1065.

Where a court has jurisdiction of an injunction suit and did not exceed its powers therein, no irregularity or error in the proceedings or in

. the order can justify disobedience of the writ. United States v. Debs, 64 Fed. Rep., 724.

Persons knowingly violating an injunction may be punished as for contempt of court, though they would be entitled to have the injunction vacated on the trial on the merits of the case. Wilke v. Wooley (Neb.), 62 N. W. Rep., 1095.

Where the court has jurisdiction of the defendant and subject matter, that the injunction is erroneous is no excuse for its violation. Forrest v. Price (N. J. Ch.), 29 Atl. Rep., 215. See Texas cases: Ex Parte Degener, 30 Texas Crim. App., 566; Ex Parte Dickerson, 30 Texas Crim. App., 488; Ex Parte Pate, 21 Texas Crim. App., 190.

On a writ of habeas corpus the evidence on which the applicant was convicted is not the subject of inquiries, and the court will not pass on mere irregularity in the proceedings. In re Bion (Conn.), 20 Atl. Rep., 662.

While in many of these cases the jurisdiction is nominally based on an alleged property right, it is plain that the observance of the rule that equity will be limited to rights of property is little more than nominal.

In all this class of cases equity does not concern itself about personal rights as the real subject of consideration. England relieved its courts of equity from any necessity of searching for rights of property on which to base their jurisdiction by the Act of 1873, section 25, subsection 8, which gave power to grant an injunction in all cases "in which it shall appear to the court to be just or convenient that such order should be made."

Under such a statute the English courts are entirely free to grant injunctions to protect personal rights, including the right of reputations, and injunctions against libels are in fact guarded. Chappell v. Stewart, 37 Law Rep. Ann., 787, note.

In Chappell v. Stewart, 82 Missouri Court of Appeals, 323, there is a note, viz: Thus the power to protect an infant from being enticed into a marriage is well established. Butler v. Freeman, 1 Amb., 301; Smith v. Smith, 3 Okl., 305; Pearce v. Crutchfield, 14 Vesey Jr., 206.

So where a girl 12 years old had been led into a marriage in ignorance of the duties of that relation and regarding the matter as a frolic, the court ordered that she be placed under the protection of the court as a ward thereof, and that her husband refrain from holding any conversation or from having any intercourse or correspondence with her so long as the order remained in force, under pain of incurring a contempt. Aymer v. Roff, 3 Johns. Ch., 49; Warde v. Warde, 2 Phill. Ch., 786, 10 Vesey Jr., 492; Cruze v. Hunter, 2 Cox Ch. Cas., 242; State v. Grigsby, 38 Ark., 406.

The constitutional guaranty of the right to speak or write or publish on any subject does not extend to the sending of letters or circulars to a debtor threatening to advertise a claim against him for sale, which is a threat to injure his credit or reputation in violation of Revised Statutes of 1889, section 3782. State v. McCabe, 34 Law. Rep. Ann., 127-130.

The constitutional guaranty of the freedom of the press and of speech will not protect against an injunction one who publishes false and injurious statements against a competitor's business. Shoemaker v. Spark Arrester Co. (Ind. Sup.), 22 Law Rep. Ann., 332.

A person under conviction and sentence of another court will not be discharged on habeas corpus, unless the court that passed the sentence was so far without jurisdiction that its proceedings must be regarded as void. Ex Parte Tinsley, 37 Texas Crim. Rep., 517; Wood v. Bush, 140 U. S., 287, 35 Law Ed., 509; Jagiro v. Bush, 140 U. S., 297, 35 Law Ed., 513; Pepke v. Cronan, 155 U. S., 100, 39 Law Ed., 84; Ex Parte Keelve, 31 Law Rep. Ann., 678.

To entitle husband to injunction against one to restrain from harboring wife, etc., it must appear that defendant acted maliciously. Campbell v. Carter, 3 Daly, 165; 2 Laws. Rights and Rem., 1310, sec. 714.

For injuries to the person or character of the wife, husband and wife must sue together. 2 Laws., 1331, sec. 730.

In reference to freedom of speech, see U. S. Const.; Texas Const., Bill of Rights, sec. 8; Cool. Const. Lim., 6 ed., p. 518; State v. McCabe, 34 Law. Rep. Ann., 127; Davis v. Massachusetts, 167 U. S., 43; Thomas v. Railway, 67 Fed. Rep., 303.

For violation of injunctions, see 2 High, 2 ed.

Injunctions must be obeyed, however erroneous. 2 High on Inj., 2 ed., p. 921, sec. 416.

HENDERSON, JUDGE.—This is an original application for a writ of habeas corpus, which grew out of contempt proceedings in the Forty-fourth Judicial District Court of Dallas County. It appears that Will R. Morris, as plaintiff, brought a suit against J. B. Warfield, as defendant, before Judge Richard Morgan, in the Forty-fourth Judicial District Court of Texas, for $100,000. The petition alleges a number of acts on the part of J. B. Warfield, the defendant in that suit, interfering with marital relations existing between Will R. Morris and his wife, Vivia Morris, said acts causing a partial alienation of the affections of his said wife; and further suggesting that the course of conduct of said Warfield towards the wife of said Morris, if permitted to continue unrestrained, would likely culminate in the total alienation of the affections of his said wife, and the destruction of the marital relations existing between them. And said Morris asked for a writ of injunction restraining said Warfield from visiting or associating with plaintiff's said wife, or going to or near her at a certain house, No. 129 Marion Street, or any other house or place in the city of Dallas, or State of Texas, where his said wife might be, and that he be restrained from writing or speaking to her, or in any manner, either directly or indirectly, communicating with her, by word, letter, writing, sign, or symbol, and also asking that his agents and employes be restrained from the like, etc.; and that said Warfield and his agents and servants be restrained from interfering with

plaintiff in his peaceful efforts to seek, talk, write or communicate with his said wife, etc. The writ was granted on the 23d of February, 1899, and was served on Warfield on the following day, the 24th of February. On the 9th of March following, plaintiff sued out an attachment against said Warfield, alleging that he had violated said writ of injunction, and made a motion for rule against him for contempt for a violation thereof. Subsequently Warfield was brought before the court, and the matter of said contempt was tried before the Hon. Richard Morgan. A number of legal questions were raised, and the issue of fact was submitted before said judge as to whether or not said injunction had been violated. It was shown, in fact it was conceded by said Warfield, that on two occasions after the issuance and service of the said writ of injunction, he had met and talked with the wife of Morris. He claimed, however, that these meetings were casual, and that he indulged in no conversation with her violative of the spirit of said injunction, or calculated to make a breach of the marital relations existing between Morris and his wife. It is further shown that he went to the house, 129 Marion Street, where the wife of plaintiff, Morris, was, but claimed that he had the right to go there, that being his boarding house, etc. A number of affidavits are filed pro and con, which it is not necessary to consider. The court, Judge Morgan presiding, adjudged Warfield in contempt of court, and assessed a fine against him of $100, and three days imprisonment in the county jail. From which judgment Warfield, the defendant in said proceeding and the applicant here, sued out a writ of habeas corpus; and he claims now, as he did before the lower court, that the court in granting said writ of injunction had no power or authority to enjoin him from speaking to, or talking with, Mrs. Morris, or from visiting the house, 129 Marion Street; that the exercise of said power was beyond the jurisdiction of a court of equity, and was not merely irregular, but void, and imposed upon him no duty to obey the same. And he now insists that the use of said power by the court was violative of the Constitution and the fundamental law of the land, in that it was an effort on the part of the court to restrain the freedom of speech and of locomotion, and the rights of the defendant in the pursuit of happiness. Furthermore, it is contended that, although the matters complained about might be regarded as a violation of the letter of the injunction, it was not a violation of its spirit, and the court had no power to coin a criminal offense out of the acts of the applicant, and to punish him as for a contempt. On the other hand, it is contended, on the part of the respondent, that the granting of the writ of injunction was not void, but, at the most, could only be considered improvident or irregular; that the court below had jurisdiction of the subject matter and all the parties; and that, it not being the void exercise of power, this court can not take jurisdiction by virtue of the writ of habeas corpus.

There is no question that this court has authority to issue writs of habeas corpus on account of contempt proceedings before district courts in the trial of civil cases. See Ex Parte Degener, 30 Texas Crim. App.,

566; Ex Parte Tinsley, 37 Texas Crim. Rep., 517. While this court is thus placed by our Constitution and laws in the attitude of supervising the action of civil tribunals in matters of contempt through the writ of habeas corpus, it fully recognizes the delicacy of its position, and it will exercise its functions with due care, and will only interfere where it clearly appears that the action of the tribunal punishing for contempt was without authority of law,—that is, not merely irregular or erroneous, but absolutely void,—because the court was without jurisdiction of the subject matter or the parties, or was wholly without power to make the order in the particular case which it did make. We will pursue this course, because we understand it to be the law, and because we will not permit the writ of habeas corpus to be used to interfere with the power and authority of the courts to properly administer the law. And no more vital power exists in the exercise of the authority of courts than to punish for contempts; in fact, it is the bedrock and essence of the authority and power of courts.

At the outset, we lay down this proposition: That wherever the court has authority to grant the writ of injunction, no matter what irregularities may attend the granting thereof, or however erroneously the court may have acted in granting the same, as long as the injunction exists, undissolved, it must be obeyed, and for a violation thereof the party will be held in contempt. 2 High on Inj., secs. 1416-1418. If, however, the court has no jurisdiction over the subject matter involved, or if it has exceeded its power, by granting an injunction in a matter beyond its jurisdiction, the injunction will be treated as absolutely void, and defendants in such case can not be punished for contempt for its alleged violation. Id., sec. 1425. The power of courts of equity to grant writs of injunction has a wide range of subjects. Courts and text writers have sometimes attempted to enumerate them, but we believe that the matter is of such a character as to escape designation; and, where the attempt has been made, the text-books say that it would indeed be difficult to enumerate all, for in the endless variety of cases in which a plaintiff is entitled to equitable relief, if that relief consists in restraining the commission or continuance of some act of the defendant, a court administers it by means of the writ of injunction. See 1 Spell. Extr. Relief, sec 5. Indeed, the interposition of courts of equity by restraining orders is a matter of growth, and keeps pace with advancing civilization, and courts are continually finding new subjects for the interposition of equitable relief by writs of injunction. Formerly, it seemed to be the rule that courts would only interfere where some property right or interest was involved; but now it seems the writ will be applied to an innumerable variety of cases, in which really no property right is involved. While in some of the cases the courts appear to adhere to the old rule, yet when we look at the case it is difficult to see any question of property right, but a vain endeavor on the part of the court to adhere to the old doctrine, while it reaches out for the protection of some personal right. In the note to Chappell v. Stewart, reported in 37 Lawyers' Re-

ports Annotated, 783 (same case, 82 Maryland, 323, 33 Atlantic Reporter, 542), the learned annotator attempts to classify the cases, where courts have interfered for protection of merely personal rights, as rights relating to physical life, and rights relating to the intellectual, moral, and emotional life, and we refer to the cases embraced in the note to said case. We quote from the conclusion of the annotator, as follows: "The variety of cases above referred to, in which personal rights are really protected by courts of equity, shows that, while it is a commonly accepted theory that their jurisdiction must rest upon rights of property, there are, at least, many exceptions to the rule, among them, cases of contract, trust, or breach of confidence, relating to personal rights, cases respecting the education and custody of children, and cases relating to privacy and reputation, such as those restraining the publication or exhibition of photographs or other representations of persons, and the publication of private letters. In addition to this are the cases relating to the security of the person and the protection of health and physical comfort. While, in many of these cases, the jurisdiction is nominally based on an alleged property right, it is plain that the observance of the rule that equity will be limited to rights of property is little more than nominal. In all this class of cases equity does concern itself about personal rights as the real subject of consideration. England relieved its courts of equity from any necessity for searching for rights of property on which to base its jurisdiction by Act 1873, section 25, subdivision 8, which gave power to grant an injunction in all cases in which it shall appear to the court to be just that such order should be made. Under such a statute, the English courts are entirely free to grant injunctions to protect personal rights, including the right of reputation, and injunctions against libels are in fact granted." Under this increased exercise of power, courts of equity grant injunctions to restrain one set of employes or servants of a railroad company from interfering with or molesting another set of employes, especially where the road is in the hands of a receiver. See In re Railway Co., 24 Fed. Rep., 217; United States v. Debs, 64 Fed. Rep., 724. And so one who has learned the business secrets of another by virtue of his employment will be restrained from interfering with the business of such former employer by writing letters, soliciting trade, etc. See Loven v. People (Ill. Sup.), 42 N. E. Rep., 82. And equity will interfere to restrain a husband from interfering with a wife or children after an agreed separation. Sanders v. Rodway, 16 Beav., 207; Swift v. Swift, 34 Beav., 266; Hamilton v. Hector, L. R. 6 Ch. App., 701; Aymar v. Roff, 3 Johns. Ch., 48, 49.

While equity will interefere in matters of contract involving personal services, a distinction is taken between affirmative and negative stipulations. Equity will not compel a servant to perform an act, but will restrain that servant from performing a negative stipulation, or some act negative in its character, involved or implied in the affirmative stipulation. See 1 Spell. Extr. Relief, sec. 11; 2 High. on Inj., secs. 1164, 1165. Under this authority, it has been held that where an opera singer or

actor has contracted to sing or play for plaintiff at his theater, and nowhere else, without his permission, an injunction will be granted to restrain the party from singing elsewhere; the court thus preventing a breach of the negative covenant, although it can not specifically enforce the affirmative agreement by compelling defendant to sing or act for plaintiff. See Lumley v. Wagner, 1 De Gex, M. & G., 604; Daly v. Smith, 38 N. Y. Super. Ct., 158. And see other authorities cited in 2 High. on Inj., p. 902, note 2. From these cases will be seen somewhat of the growth and application of the modern doctrine of equity in granting writs of injunction. We might cite a number of other cases illustrative of this view, but do not deem it necessary. If we refer to the modern cases (especially under liberal statutes on the subject of granting writs of injunction), the old doctrine of the freedom of speech and of the press, and that courts will only punish after an act which is violative of one or the other, appears to be overthrown in England, as we have seen, by statute. And see Kitcat v. Sharp, 52 Law. J. Ch., 134. Our statute, as we shall hereafter see, is as liberal as the English statute on the same subject. So, the cases of People v. Durrant, 116 California, 179, 48 Pacific Reporter, 75, and Association v. Boogher (Missouri), 4 Central Law Journal, 40, would seem to have no application.

Now, we come back to the question as to whether or not, under the modern equity doctrine on the subject of granting writs of injunction, the action of the court here complained of was absolutely void. In Ex Parte Wimberly, 57 Mississippi, 437, the distinction between the doctrine of void and voidable writs of injunction is very well put. That was a case of a contested election. The contestant sued the contestee for the office of county clerk. In that State a peculiar statute provided that such a contest should be tried before a justice of the peace and a jury; that an appeal should lie therefrom to the circuit court; but that the appeal should not operate as a supersedeas. The contestant was enjoined from prosecuting his suit on the grounds alleged,—that the justice of the peace before whom the case was to be tried was a political supporter and a bitter partisan of the relator; that the constable of the court was his brother, and that a judgment in his favor would be rendered, without regard to the merits of the contest; and that, if not allowed to enjoin the proceeding, the relator would be permitted to enjoy the office for a period of five or six months, to which he had not been elected. An injunction was granted, but it was disregarded, and the suit before the justice prosecuted to its termination. The parties were attached for contempt, and the court adjudged them guilty of contempt, and they sued out a writ of habeas corpus on the ground that the writ was void. The court, in discussing the question of jurisdiction or want of power in the court to grant the writ, uses the following language: "The want of jurisdiction here referred to is something widely different from the sense in which the words are used when we say that a court of law has no jurisdiction to settle a partnership account, or that a court of equity can not entertain a suit sounding wholly in damages, because

it frequently admits of doubt in the inception of a litigation whether the particular suit before the court should not have been instituted in some other tribunal; and while the court is considering this question, and evolving the facts necessary to its determination, its authority must be respected and its orders obeyed. When we say that a person may safely disobey the commands of a court which is without jurisdiction to issue them, we mean either that it has failed to give, or is incapable for some reason of giving, legal notice to the person whose rights are to be affected, or that the subject matter of the controversy is one which that court has no right to consider in any aspect whatever. Thus, if a court of law should assume jurisdiction of a suit for divorce, and issue an order for alimony pendente lite, the person against whom it was entered might safely disregard it. So, if a court of chancery should undertake to interfere in any way with a criminal prosecution, or to enjoin a convicted person from asking for an executive pardon, its action would be utterly null, and might be so treated by everyone. These illustrations enable us to appreciate the difference between that class of cases where there may or may not be jurisdiction, according as a full development of the facts may show that relief is to be sought in the one forum or the other, and where consequently it is the duty of the court first applied to to have the facts developed, with a view of determining the question of jurisdiction, and that other class of cases where it is at once perceived, from a mere mention of the subject matter of controversy, that no condition of facts can give jurisdiction. In the one case, the orders of the court must be respected. In the other they must be treated as the impotent commands of a private person masquerading in the guise of judicial authority." And the court, further proceeding, uses this language: "But the bill for an injunction in this case did not seek to draw to the chancery court a settlement of the questions involved in the proceedings before the justice, but only asked, for special reasons, that those proceedings might be temporarily stayed. Conceding then, that a court of chancery can not try a contested election case, may it enjoin a trial of such a case by the tribunal which alone has authority to try it? The power of the chancery court to enjoin actions at law is ancient and indisputable; and hence it is argued that, as it has this power, it must necessarily have authority to determine whether a particular action should be enjoined or not," etc., or, at most, whether it was only improvidently or wickedly granted. "But a very different question is presented when the issue is not whether the court has authority to enjoin the special action at law complained of, but whether it can enjoin any action whatever belonging to a general class of actions; for, while it is true that most actions at law may be enjoined, there are large classes of them as to which no state of facts will justify the interposition of a court of equity." And then cites, as an illustration, that the prosecution of any criminal case will not be enjoined, quoting from Storey, Equity Jurisprudence, section 893; and then proceeds to show that under no circumstance, under the statutes of Mississippi, prescribing the mode of con-

testing elections, can the court of chancery try such election cases, and holds that it can not enjoin the trial of the same in a tribunal authorized to try such cases by law. The same view with reference to contesting elections and granting of injunctions by courts is taken in Illinois. See Andrews v. Knox, 70 Ill., 65; Dickey v. Reed, 78 Ill., 261. In regard to this matter we quote from the latter case, as follows: "To the complete authority to so act [that is, to issue writs of injunction] there are several things which are indispensable to enable the court to hear, determine, and decree. There must be a complainant. He must file a bill, alleging the facts, showing that he has an interest in the matter in litigation, or, at least, to complain and have relief for others. There must be a matter to which rights are claimed, and that matter must be within the power of the court, when properly before it, to act upon or control it by its sentence, before it can adjudge and decree that parties shall be restrained from acting in reference to the thing in litigation. If any of these essential requirements is wanting, the court can not decree that the restraining order shall issue."

We deduce from the foregoing authorities, and others that might be cited, these propositions: First. That courts of equity can authorize the issuance of writs of injunction in all cases of equitable cognizance, where the party shows himself entitled to the issuance of the writ under the well known rules of equity. As ancillary to this, that the growth of the principles of equity in this regard have been greatly enlarged, so that it may be said that where a court of equity has jurisdiction of the case, and a party shows that he is liable to suffer injury by some act threatened or that may be done pending the litigation, whether this has regard to property in issue or to some personal right dependent upon some personal act or conduct, the court will grant the writ. In such case, it can not be said that the court lacks the power, although, in doubtful cases, it may refrain from the exercise of such power. Second. That in actions purely legal, of which the law courts have exclusive cognizance, there is no authority to issue a writ of injunction. Third. In a case (and there have been many such) where it is doubtful whether the action is one at law or of equitable cognizance, as a general rule, where the case is brought in an equity court, the chancellor has the same power to issue the writ as if there was no question of the jurisdiction, and as long as the writ continues it must be obeyed.

So far we have spoken of the matter as if the jurisdictions were entirely separate, as is the case in England and in most of our States. But in Texas we have a blended system of law and equity, there being but one jurisdiction for both, and, by a stronger reason, the writ of injunction will be authorized in a doubtful case.

Now, recurring to the subject matter of this litigation, as set forth in plaintiff's petition, we think there can be no question that appellant sets forth a cause of action for the partial alienation of his wife's affections. The marital relation existing between these parties was a civil contract, binding, until it should be abrogated, upon both of the spouses. "He

is entitled to the society of his wife, and may sue for damages any person enticing her away from him; and, whenever a wife is not justified in abandoning her husband, he who knowingly and intentionally assists her in thus violating her duty is guilty of a wrong for which an action will lie." See 2 Lawson, Rights, Rem. and Prac., sec. 714. "It is a legal presumption that a wife's services and the comfort of her society are fully equivalent to any obligations which the law imposes upon her husband because of the marital relation, and her obligation to render family service is coextensive with that of her husband to support her in the family. Id., sec. 715; Schouler, Dom. Rel., sec 41; Bennett v. Smith, 21 Barb., 439; Barnes v. Allen, 30 Barb., 663. A husband, from time immemorial, has an interest in the services of his wife, springing from the marital relation. In this State, suits for personal injuries to her must be maintained by the husband predicated upon this idea. The suit here was brought for damages on an alleged partial alienation of the affections of his wife, and it was averred that, on account of the past conduct of the defendant in that suit, plaintiff was apprehensive, and had just grounds to fear, that, by a continuance thereof, the wife's affections would be entirely alienated. There would consequently be a breach and destruction of the matrimonial contract existing between the parties, by which plaintiff would entirely lose the affections and services of his said wife. These, it must be conceded, were of a peculiar value to plaintiff; and it would seem that, if the court had the power to maintain this suit for damages on account of the partial alienation of the affections of his said wife, he would have a right to invoke the restraining power of a court of equity to prevent the utter alienation of his wife's affections and the utter destruction of the marital agreement. We believe this would be so under the liberal rules of equity, as now practiced in the courts, but much more so under the provisions of our statute on the subject of injunctions. Article 2989, Revised Statutes, provides that the judges of the district courts may grant writs of injunctions in the following cases: "(1) Where it shall appear that the party applying for said writ is entitled to the relief demanded, and such relief or any part thereof requires the restraining of some act prejudicial to the appellant." This provision shows that it was intended to be broader than the ordinary authority, because, in the third subdivision of the act, the court is authorized to grant the writ in all other cases where the applicant for said writ may show himself entitled thereto under the principles of equity. For a construction of these provisions, see the able opinion of Judge Denman of the Supreme Court in Sumner v. Crawford, 91 Texas, 129. After reciting the provisions of the statute, the learned judge uses this language: "It will be observed that the latter portion of the article requires the case to be brought within the rules of equity, and does not undertake to state the circumstances entitling the applicant to the writ, and therefore, under it, it must appear that there is no 'adequate remedy at law,' as that term has always been understood. But the first portion of the ar-

ticle does state what facts will justify the issuance of the writ there-under, and does not require that there shall be no adequate remedy at law." And we would further suggest that the question decided in said case is very much in point in this case, as showing the liberality of our courts in granting writs of injunction. The court below, it will be conceded, had jurisdiction and authority to maintain the suit, and it can not be seriously questioned that the principal object of the suit was to preserve the marital relations existing between plaintiff and his spouse, and to conserve, as far as may be, and rehabilitate, her affections for the plaintiff. It was claimed, by the continued conduct and interferences of the defendant in that suit, that the integrity of the marital relation was threatened, and, if his course of conduct was suffered to continue, that the marital relation would be destroyed. Among other things, it was alleged that said defendant exercised an undue influence over the wife of plaintiff, and, if suffered to associate with her and speak and talk with her, and visit her, it was very likely he would entirely corrupt and lead her astray, and therefore the power of the court was invoked to arrest these interferences, and defendant was enjoined from speaking or talking with her, or visiting the house where she was staying. It occurs to us, if the suit itself was maintainable, that the acts complained of were prejudicial to the plaintiff; indeed, that, by their continuation, the real object of the suit would be entirely frustrated; and that the court consequently had the power and authority to inhibit said defendant from interfering with plaintiff's wife, and that this was no interference with the inalienable rights of the citizen to go where he pleased, and to associate with whom he pleased, and to pursue his own happiness in his appointed way, provided such course of conduct did not interfere with another's right. "He had a perfect right to so use his own as not to abuse another's." Nor is there any inconsistency, when thus construed, between the freedom of speech and of the press and the integrity of the marital relation. The law is as much bound to protect the one as the other, and, when both can be construed in harmony, it is the duty of the courts to protect both.

It has been said that applicant was not shown to have violated the spirit of the injunction, inasmuch as no conversation was shown of a character calculated to persuade or lead away the wife of the plaintiff; but his conduct was certainly in violation of the letter of said injunction, and we can not say that the court did not have the right and authority to make the injunction as broad as it did, as, under the allegations of the petition, it is shown that defendant was not to be trusted in the society of Mrs. Morris, or to speak with her.

But, even if it be conceded that the act of the court in this regard is of doubtful validity,—that is, that it may or may not be void,—still we do not feel inclined to interfere. The defendant in that suit had his right to invoke the action of that court to dissolve that injunction. He did not do so, but he saw fit to willfully disregard it, and he now claims

before this court that the same was absolutely void, and that he had the right to defy it and set it at naught. It occurs to·us that the injunction could have been easily obeyed, without infringing upon any of the fundamental rights of the applicant. We accordingly hold that the applicant does not show himself entitled to be relieved. It is therefore ordered that he be remanded to the custody of the sheriff of Dallas County, and undergo the sentence imposed upon him by the judge of the Forty-fourth Judicial District Court. It is further ordered that the costs incurred in this court be taxed against the applicant.

*Relator remanded to custody.*

[NOTE.—Appellant's motion for a rehearing was overruled May 24, 1899, without a written opinion.—Reporter.]