Day, J.,
 

 dissenting. .. Finding myself unable to concur in the judgment of Nreversal'reached by the majority, it seems fitting that I should give’ my own conclusions and the authorities relied upon to support the same. '
 

 This record is purposely made by counsel to raise the question whether, when the personal and property rights of the wife in the marriage relationship, to support, consortium, and the right to win and hold the affections of her husband, are invaded by the willful and malicious acts of another, and it being conceded that an action at law for damages is inadequate, equity may enjoin the further interference; in other words, how far shall the jurisdiction of a court of equity be used to protect purely personal rights as well as property rights, or those rights that border closely upon property rights yet are really of a personal character? The question, then, is entirely one of jurisdiction.
 

 Formerly equity jurisdiction extended only to the protection of property rights, yet of late years a tendency has developed to extend the jurisdiction to include personal rights, at least to some extent.
 
 *248
 
 erty, there are at least many exceptions to the rule; among them, cases of contract, trust, or breach of confidence relating to personal rights, eases respecting the education and custody of children, and cases relating to the right of privacy and reputation, such as those restraining the publication or exhibition of photographs or other representations of the person, and the publication of private letters. In addition to these are the cases relating to. the security of the person and the protection of health and physical comfort. While in many of these oases the jurisdiction is nominally based on an alleged property right, it is plain that the observance of the rule that equity will be limited to rights of property is little more than nominal. In all this class of cases equity does concern itself about personal rights as the real subject of consideration.” 37 L. R. A., 787; 14 A. L. R., 286-295.
 

 
 *247
 
 “While it is a commonly accepted theory that their jurisdiction must rest upon rights of prop-
 

 
 *248
 
 By statute in the state of Ohio, husband and wife contract toward each other obligations of mutual respect, fidelity, and support, and the husband must support himself, his wife, and his minor children out of his property or by his labor, and if he is unable to do so the wife must assist him so far as she is able.
 

 It is not to be denied that the wife has certain inalienable rights growing out of the marriage relationship, which must be viewed in a somewhat broader aspect than that of a mere civil contract, it being a status, and may be defined as a union of one man and one woman for life, to the exclusion of all others.
 

 It has long been the law of this state that the
 
 *249
 
 wife has a right of action for damages against those who alienate the affections of her husband, or deprive her of the right of consortium or his support, and even though the husband be a willing party to such deprivation or alienation, yet the action will lie.
 
 Flandermeyer
 
 v. Cooper, 85 Ohio St., 327, 98 N. E., 102, 40 L. R. A., (N. S.), 360; Ann. Cas., 1913A, 983;
 
 Westlake
 
 v.
 
 Westlake,
 
 34 Ohio St, 621, 32 Am. Rep., 397.
 

 In the latter case the court speaking by Gilmore, C. J., on page 633, says:
 

 “Is the fight of the wife to the
 
 consortium
 
 of the husband one of her personal rights? If it is, then the statute makes the right of action, growing out of an injury to the right, the
 
 separate property
 
 of the wife, fof > which the Code gives her a right to sue in her own name. * * * "When the agreement to marry is entered into, but before its consummation, each has the same interest in it, and either may sue for a breach of it by the other. In this state, neither the husband nor wife unconditionally surrenders their personal rights by consummating the contract of marriage. On the contrary, each acquires a .personal, as well as legal, right to the conjugal society of the other, for the loss of which either'may sue separately.”
 

 Dbnahue, J., in
 
 Flandermeyer
 
 v. Cooper,
 
 supra,
 
 says, at page 340 (98 N. E., 105):
 

 “Consortium is defined té be the conjugal fellowship of husband and wife, and the right of each to the company, co-operation and aid of the other in every conjugal relationship.
 
 Bigaougette
 
 v.
 
 Paulet,
 
 134 Mass., 123.
 

 “This right is invaded whenever a third person,
 
 *250
 
 through machination, enticement, seduction, or other wrongful, intentional, and malicious interference with the marriage relation, deprives the husband or wife of the consortium of the other.”
 

 When 'damages may be recovered at law for the invasions of this right, we see no reason why equity may not enjoin, when the legal remedy fails, and we must accept as conceded in this case that the money action for damages is inadequate, owing to the financial irresponsibility of the defendant below.
 

 The jurisdiction of a court of equity to protect marital rights by injunction has heretofore been recognized. In
 
 Ex parte Warfield,
 
 40 Tex. Or. R., 413, 50 S. W., 933,
 
 76
 
 Am. St. Rep., 724, the right was recognized in an action denying
 
 habeas corpus
 
 to one who was imprisoned in jail upon a con tempt charge for violating an order restraining the defendant from writing to, speaking to, or talking with, the plaintiff’s wife, whose affections he had already partially alienated from her husband.
 

 It is true that the case arose on
 
 habeas corpus,
 
 and hence should not be regarded as controlling, but the principle of the power of equity to enjoin those who interfere with the marriage relation is clearly recognized.
 

 In discussing this case, Dean Pound, in 29 Harvard Law Review, p. 674, says:
 

 “If the order had been appealed from, there might have been a serious question as to the expediency of exercising the jurisdiction. The chancellor would have to consider whether he could reasonably expect to accomplish anything
 
 *251
 
 by such an injunction; to consider whether a situation where the defendant was in jail because he persisted in seeing her would not be likely to fan the wife’s erring affection for defendant, and to consider that he could not keep the wife away from the defendant, even if he could keep the defendant away from the -wife. But these considerations are not relevant to the
 
 question of juris
 
 diction„ * * *
 

 “Two circumstances, however, detract somewhat from the weight of
 
 Ex parte Warfield
 
 as an authority. There was a statute in Texas which the courts of that state construe as giving a wider power of granting injunctions than that possessed by courts under the general equity doctrine. Also, it might be urged that at common law the husband has a legal right to the services of the wife, which is to be regarded as a property right, and hence that equitable relief may be invoked to secure that right, and may be employed incidentally to secure the more significant interests of a purely personal nature. Thus the case could be brought within the analogy of
 
 Gee
 
 v.
 
 Pritchard,
 
 [2 Swanst. 402]. But it-is significant that the property right of the husband in the wife’s services, now thoroughly moribund for all substantial purposes, should acquire a temporary vitality to enable the courts to secure interests of personality which they hesitate to protect avowedly as SUCll * *
 

 In
 
 Stark
 
 v.
 
 Hamilton,
 
 149 Ga., 227, 99 S. E., 861, 5 A. L. R., 1041, a father secured an injunction against those who were keeping his min- or daughter in prostitution; the injunction being
 
 *252
 
 grounded not only upon the grounds that the father had the property right in the services of his minor daughter, but that he had a further right to have and to keep her within his home, and not to be interfered with by others who might prevent him from reforming his minor daughter and recovering her good name, and leading her into the paths of rectitude.
 
 Ex parte Warfield
 
 is cited with approval in this case.
 

 Counsel for plaintiff cite the case of
 
 Hodecker
 
 v.
 
 Stricker
 
 (Sup.), 39 N. Y. Supp., 515. The same does not, however, apply, for the reason that in that case the plaintiff was not then being deprived of any support or consortium, and the purely personal right of some other woman using her name and thus scandalizing and injuring the plaintiff was not deemed sufficient for the jurisdiction of the court of equity, “there being no allegation that plaintiff still lives with him, or that her cohabitation with him was discontinued for any cause attributable to. defendant,” which fact sufficiently distinguishes
 
 Hodecker
 
 v.
 
 Stricker, supra,
 
 from the case at bar.
 

 Hall
 
 v.
 
 Smith,
 
 80 Misc. Rep., 85, 140 N. Y. Supp., 796, was an action brought by the plaintiff, the wife, against the defendant, a woman, who was charged with having enticed away, or alienated from the plaintiff, the love and affection of her husband, whereby the plaintiff had been deprived of the society of her husband ever since the time when he first met the defendant. Finding that it is the settled law that the wife may maintain a suit for alienation of the affections of her hus-
 

 
 *253
 
 band and consequent loss of consortium, tbe court says, at page 87 (140 N. Y. Supp., 798):
 

 “The motion which has been made in this action requires the determination of the question whether in such an. action an injunction order may and should be made to restrain the defendant
 
 pendente lite
 
 from the continuance of' those acts which lie at the foundation of the cause of action. While the question is most unusual, in respect of the power of the court to grant such relief, I have no doubt whatever that in a proper case the right to grant such an injunction resides in the court of equity, and that it is not unduly extending the jurisdiction or cognizance of the court to restrain the impending, threatened, or continued commission of such acts as are violative of the rights of a plaintiff in a suit of this character.”
 

 We regret that the record in this case is not mqre full, as we are denied anything save the amended petition, the answer, which is a general denial, and the journal entry, which finds that ‘4 the allegations of the petition and each of them are true,” and that the plaintiff is entitled to the relief prayed for.
 

 The averments of the amended petition are very broad, charging the defendant below for a period of over five years of wickedly, purposely, and maliciously intending to win from plaintiff the affections of her husband, his companionship, support, love, and to appropriate the same to herself, and that the defendant, unless restrained by am order of court, in order to prevent the plaintiff from regaining the love, esteem, affection, cooperation, aid, and support, and conjugal relation
 
 *254
 
 of her husband, will wickedly, maliciously and purposely continue to do and perform each and all of the matters and things complained of, by reason of which the plaintiff will be prevented from regaining the love, esteem, affection, support, and conjugal relation of her said husband. There is an averment of the insolvency of the defendant and the inadequacy of any legal remedy.
 

 While these averments of the amended petition are denied by answer, there is no testimony in the record, and we are informed by counsel that no trial was in fact had, but that a waiver of any damages over the sum of $5 was made by the plaintiff, and the defendant below was enjoined as heretofore set forth.
 

 We are therefore denied any opportunity to know what a full hearing would have developed, but must reach our conclusion simply upon the single question presented, to wit: Has a court of equity jurisdiction to enjoin such an invasion of the personal and property rights of the plaintiff below when no adequate remedy at law exists?
 

 I think, technically, the jurisdiction exists, but that the expediency of granting such relief and its enforcement are serious questions for the trial judge, sitting as a chancellor, to determine in the first instance. We simply sit as a reviewing court to determine the power of a court of equity in the premises.
 

 It is unfortunately true that the law cannot produce or make happy marriages by its order and decree, and the ability of a court of equity to compel obedience by the husband of his marital duties toward his wife, by restraining his paramour
 
 *255
 
 from seducing him from his wife, is extending such power a great way; the law already giving some remedy, even though the same may not always he fully adequate.
 

 For reasons of expediency and public policy, the chancellor might well refuse the assistance of a court of equity, as the consortium, affection and .support of a husband that must be vouchsafed to the wife by an injunction restraining other women from enticing him from his wife are of such doubtful value and character that the action of a court of equity would avail very little to benefit the wronged spouse.
 

 If divorce, alimony,' damages for alienation, of affection, or arrest for nonsupport of minor children, are all of no avail, surely the decrees of a court of equity may not bring back the love, affection, esteem and consortium of which so worthless a husband deprives his wife. But these are matters for the consideration of the trial judge, and not for a reviewing court.
 

 ; While the marriage relation should be kept out of court, rather than be allowed to go into court to adjust its wrongs and grievances, fancied or otherwise, yet I cannot s$y that, when all other means have failed, a court of equity has no power in the premises.
 

 ■ A good statement of equitable principles applicable to the present situation is found in 4 Pomeroy’s Equity Jurisprudence, Section 1338:
 

 “In détermining whether an injunction will be issued to protect any right of property, to enforce any obligation, or to prevent any wrong, there is one fundamental principle of the utmost impor
 
 *256
 
 tance, which furnishes the answer to any questions —the solution to any difficulties which may arise. This principle is both affirmative and negative, and the affirmative aspect of it should never be lost sight of, any more than the negative side. The general principle may be stated as follows:. Wherever a right exists or is created by contract, by the ownership of property or otherwise, cognizable by law,
 
 a violation of that right will be prohibited,
 
 unless there are other considerations of policy or expediency which forbid a resort of this prohibitive remedy.
 
 The restraining power of equity extends, therefore, through the whole range of rights and duties which are recognised by the law, and would be applied to every case of intended violation, were it not for certain reasons of expediency and policy which control and limit its exercise.
 
 This jurisdiction of equity to prevent the commission of wrong is, however, modified and restricted by considerations of expediency and of convenience, which confine its application to those cases in which the legal. remedy is not full and adequate. Equity will not interfere to restrain the breach of a contract, or the commission of a tort, or the violation of any fight, when the legal remedy of compensatory damages would be complete and adequate. The incompleteness and inadequacy of the legal remedy is the criterion which, under the settled doctrine, determines the right to the equitable remedy of injunction.”
 

 Applying this doctrine to the present instance^; we are confronted with the absolute finding of the courts below that the plaintiff in error is
 
 *257
 
 financially irresponsible; bence the inadequacy of the legal remedy. > » ,
 

 I am of opinion that the injunction granted in the present instance was far broader than necessary, and that as far as the injunction should go would be to enjoin the plaintiff in error from visiting or associating with defendant in error’s husband, and from doing any act preventing or tending to prevent the husband from giving to his wife the love, affection, companionship or conjugal relation to which she is entitled, and that the plaintiff in error should not interfere with the defendant in. error in her efforts to regain the love, esteem, affection, support and conjugal relation. If the injunction were modified in this form, and, considering the matter as a pure question of equitable principles concerning personal and property rights growing out of the marriage relation, I am, in the light of
 
 Flandermeyer
 
 v.
 
 Cooper,
 
 supra, and
 
 Westlake
 
 v.
 
 Westlake, supra,
 
 constrained to the conclusion that the equitable power exists, even though it should rarely be exercised, and that, therefore, the conclusion of the courts below should be affirmed'.