ELLIOTT CLARK, Plaintiff in Error, *v.* MARY ANN HARLAN, who sues by her next friend, Defendant in Error.

An action will lie in favor of a married woman against a third person for enticing away and harboring her husband.

The petition in this cause was originally filed against the defendant, now plaintiff in error, and Robert Harlan, the plaintiff's husband, against whom, on demurrer, the court held the action could not be maintained.

The petition seeks to hold the defendant liable in damages for "wrongfully and maliciously enticing away the plaintiff's husband from her residence, whereby she has been, for a long space of time, and still is, deprived of his society, protection, and support." It is also alleged, "that her husband has been detained and harbored by the defendant in his private residence, to which the plaintiff has not been admitted. notwithstanding all her efforts to live with him and enjoy

Clark v. Harlan.

the privileges of a wife." The plaintiff further avers, "that her separate property, owned at the time of her marriage, has been enjoyed by her husband, whose personal services are required to take proper care of her interest therein; of all which she is also deprived by the acts of the defendant."

To this petition the defendant demurred, and at Special Term the demurrer was overruled. To this, exception was taken, and the case taken on error to General Term.

*Teetor & Cole*, for plaintiff in error.

*Applegate*, contra.

STORER, J. It is urged that the pleadings do not present a case for our interference.

In the leading case of *Winsmore* v. *Greenbank*, Willes Rep. 377, where the plaintiff sought to recover damage for the enticing away and detaining his wife by the defendant, after a verdict for 3,000*l.*, on motion to arrest the judgment, Chief Justice Willes, in deciding the questions made by counsel, said: "The first general objection is, that there is no precedent for any such action as this, and therefore it will not lie; and the objection is founded on Lit. f. 108 and Co. Lit. 81 b., and several other books. But this general rule is not applicable to the present case; it would be if there had been no special action on the case before. A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage without a remedy; but there must be new facts for every action on the case."

In the subsequent case of *Chapman* v. *Pickersgill*, 2 Wilson, 146, Chief Justice Pratt, in an action for maliciously suing out a commission of bankruptcy, used these words: "It is said such an action as this was never brought before; and so it was said in *Ashby* v. *White*. I wish never to hear this objection again. This action is for a tort; torts are infinitely various, not limited or confined; for there is nothing in nature but may be made an instrument of mischief." The masterly reasoning of Chief Justice Holt, in

*Ashby* v. *White*, 2 Ld. Raymond, 957, which was sustained in the House of Lords early in Queen Anne's reign, is entirely in harmony with this doctrine; and we must be permitted to quote a remark of that venerable jurist which is full of meaning: "Let us consider," he says, "in what the law consists, and we shall find it to be not in particular incidents and precedents, but in the reason of the law. *Ubi eadem ratio ibi eadem lex.*"

In the case of *Pasley* v. *Freeman*, 3 Term R. 45, which was then regarded as one of first impression, Lord Kenyon, who always upheld a strict adherence to the established law, after one of his brethren, Mr. Justice Grose, with whom he differed, had stated that he found no precedent for the action, uttered the ever-memorable words: "All laws stand on the best and surest basis which go to enforce moral and social duties."

Mr. Justice Asherst, in his opinion, said: "Another argument has been made use of, that this is a new case, and that there is no precedent for such an action. Where cases are new in their *principle*, there, I admit, it is necessary to have recourse to the legislative interposition in order to remedy the grievance; but where the case is only new in the *instance*, and the only question is upon the application of a principle recognized by the law to such new case, it will be just as competent to courts of justice to apply the principle to any case which may arise two centuries hence as it was two centuries ago."

The judgment in that case was for the plaintiff, and since it was given had always been followed as the established law.

This court, in General Term, in *Campbell's Administratrix* v. *Rogers et al.*, 2 Handy, 117, after a thorough examination of the authorities, came to the same conclusion, relying on the case just quoted to sustain their judgment. We are satisfied that there is no difficulty in upholding the present action against the objection that no precedent can be found where a precisely similar case has been presented to the courts.

Clark *v.* Harlan.

There certainly could be no objection if the husband had brought the action for enticing away his wife, as his legal right to complain can not be questioned; but how far the case is changed when the wife sues is to be considered.

We can find but one case reported where the point has been discussed. It is that of *Lynch* v. *White and wife*, decided in 1861, and reported in 9 House of Lords Cases, 577. There Campbell, Lord Chancellor, after hearing full argument said: "Although this is a case of first impression, if it can be shown that there is presented to us a concurrence of loss and injury from the act complained of, we are bound to say that this action lies. Nor can I allow that the loss of *consortium* or conjugal society can give a cause of action to the husband alone. The loss of conjugal society is not a pecuniary loss, and I think it may be a loss which the law may recognize to the wife as well as to the husband." In this case the gravamen of the action was that the defendant had slandered a married woman, in consequence of which her husband had abandoned and lived apart from her; and although the case was finally decided for the defendant, it was upon the ground that no special damage had been averred or proved. The Law Lords gave their opinions, concurring that the words uttered by the defendant furnished no ground of action merely from the general consequences resulting from what was admitted to be the law, but that there must have been special damage. Lord Brougham, in commenting upon this opinion of the chancellor, emphatically adds, "I must add that I entirely agree with what my late noble and learned friend says toward the end of his judgment. He laments the unsatisfactory state of our law, according to which the imputation, by words however gross, on an occasion however public, upon the chastity of a modest matron, or a pure virgin, is not actionable without proof that it has actually produced special temporal damage to her. The only difference of opinion I have with my noble and learned friend is, that instead of the word "unsatisfactory" I should substitute the word "barbarous." I think that such a state of things

can only be described as a barbarous state of our law in that respect."

In this state we have no such difficulty to encounter. It has long been the settled law in Ohio, that any accusation affecting the chastity of a female is actionable *per se*. See *Murray* v. *Murray, supra*, p. 290, and cases cited.

If the husband's right to claim damages for the loss of his wife's society, his "*solatium*" as the civilians term it, arise by virtue of the contract of marriage, the same result, for stronger reasons, should follow the loss of the husband's *consortium* by the wife. His care of her whole social life; his protection from injury of her person, of her property, and of her good name, are alike demanded by the marital tie and the first principles of justice. He can not lightly disregard the obligations he has solemnly assumed, or ignore the relation he bears to her to whom he has pledged his affections until the bond is severed by death or the judgment of the law. Although he prove false to his duty, there is no remedy against him like that she now seeks, for compensation in money except for alimony, but we believe she is enabled, under the law as it now exists in Ohio, to ask the same relief for the same causes that would give the husband a remedy against him who should seduce away his wife or persuade her to leave her husband, and afterward harbor and detain her without good cause. The loss of the parties in each case is essentially the same.

Since the enactment of the Code, a new application of legal principles in relation to married women is required of the courts. The twenty-eighth section gives the wife the right to sue for her separate property without joining her husband as co-plaintiff.

By the statute of April 9, 1861, S. & S. 389, is given to the wife all the personal property, including rights in action belonging to her at her marriage, or which may have come to her by descent, bequest, gift, or has been purchased with her separate money, *or have grown out of the violation of her personal rights*, to be and remain her separate property.

The section of the Code we have referred to was amended by the law of April 18, 1870, authorizing the wife, in all cases relating to her personal estate, to sue as a *feme sole* without the intervention of a *prochein ami.*

Is not the right secured to the wife to recover for a personal injury suffered during coverture to be sustained on the same principle as her claim to protect her separate estate, whether it be real or personal? If it is, can there be any distinction between the rights which grow out of the marital relation and those which attach to mere property? We can not see that such a distinction can be drawn.

Such is the construction given by the Supreme Court of New York to their statutes, which, like our own, have so essentially changed the rights and responsibilities of married women. In *Mann et ux.* v. *Marsh*, 21 Howard's Pr. Rep. 376, Allen, J., held that these statutes "gave the wife the exclusive right to recover for injury to her reputation as well as her person, and had taken from her husband all control over actions brought to obtain redress by the wife. These injuries are now made a part of her separate estate, and in respect to them she is a *feme sole.*"

We can not but feel a deep conviction that the wife is in the highest sense the ward of the court, not because she is now, under the generous policy of our law, relieved from the old idea of conjugal servitude which placed her as a chattel under the control of her husband, but because it is only consistent with the relation into which the parties have entered that each must have their separate interest, controlled only by mutual affection and regard, while subject, nevertheless, to the protection of the law.

There might not be, on the trial of this cause, a right established to recover damages, as the evidence may present a different state of fact than that stated in the petition; but for all the purposes of this case we are satisfied a legal right to recover is found in the pleadings.

Demurrer overruled.