DUFFIES, Respondent, vs. DUFFIES, Appellant.

*March 1 — April 8, 1890.*

*Married women: Action for loss of husband's society and support.*

Neither at common law nor under the statutes of this state can a wife maintain an action against one enticing away her husband, for the loss of his society and support. CASSODAY, J., dissents.

APPEAL from the Superior Court of *Milwaukee* County. The case is stated in the opinion.

For the appellant there was a brief by *Van Dyke & Van Dyke*, and oral argument by *G. D. Van Dyke*.

For the respondent there was a brief by *Williams, Friend & Bright*, and oral argument by *A. H. Bright*.

ORTON, J. This action is brought by the plaintiff, as the wife of one Frank W. Duffies, against the defendant, the mother of said Frank, to recover damages by reason of the defendant having wrongfully induced, persuaded, and caused the said Frank W. Duffies to refuse further to live and cohabit with the plaintiff and to support and maintain her and to support and maintain their child, and maliciously enticed him away from her, intending thereby to deprive her of his society and support, maintenance, aid, and assistance. The action was tried, and the plaintiff recovered, by the verdict of the jury, $2,000, of which the plaintiff remitted $1,000, and judgment was rendered for the residue thereof. Errors are assigned for admitting irrelevant testimony, refusing to submit certain questions to the jury and to give certain instructions, and for denying motions for nonsuit and for a new trial, but they will not be considered any further than some of them may involve the question whether the action itself will lie.

The learned counsel of the appellant, before the trial was commenced, objected to the introduction of any evidence

under the complaint, on the ground that it stated no cause of action, which objection was overruled. On this demurrer, *ore tenus*, the learned counsel contended that this action would not lie at common law, and that there is no statute allowing it. From the examination of the authorities we have been able to make, and considering the reason thereof, we have concluded that such contention is correct, and that the action cannot be maintained.

The learned counsel of the respondent contends that the action lies (1) at the common law; and (2) by the terms and liberal interpretation of our statutes; and (3) by analogy to similar cases. The learned counsel does not contend that any such action was ever maintained at the common law, but that by the principles of the common law, and in analogy to similar actions at the common law, the right of action existed, and was not maintainable only on account of the wife's disability to bring the action. But the wife was not only unable to bring the action to recover damages for the loss of her husband's society, but the damages themselves were the property of the husband, the same as in case of personal injury, or for defamation, even before marriage. *Gibson v. Gibson,* 43 Wis. 23; *Barnes v. Martin,* 15 Wis. 240. How can she be said to have had a right of action to recover damages which she could neither own nor enjoy. More properly the right of action was in the husband, in the interest or on account of his wife. The common law could not recognize a right of action in the wife to sue for the loss of her husband's society, without involving the absurdity that the husband might also sue for such a cause. The wife having no right of property, at common law, in any damages recovered on her account for any cause, neither could she have any right of action to recover them. This may have been grossly wrong, but such was the theory of the common law, and, to make it consistent, the wife had no such right of action. The wife was not only inferior to

the husband, but she had no personal identity separate from her husband. It is not proper to say that the common law was inconsistent in denying to the wife the right to bring such an action, and at the same time allowing the husband to sue for the loss of the society of his wife. Her disability in this respect was consistent with all of her other disabilities.

When the learned counsel cites the case of *Winsmore v. Greenbank*, Willes, 581, decided in the 19th year of George the Third, in which the husband sued for enticing away his wife, *per quod amisit* the comfort and society of his wife, as furnishing the same reason for the wife bringing such an action, he ignores all these common-law disabilities of the wife, which are consistent with each other. Chief Justice WILLES admitted that there was no precedent for such an action, but, as the action on the case had been invented for similar cases, he claimed that this was only another case with new facts, and as there were "injury and damage," and the violation of a right, and the action ought to lie, it would lie within the reason of other cases. And so the learned counsel argues from *Philp v. Squire*, Peake, 82, in the 31st year of George the Third, in which Lord KENYON held that the action by the husband was not for the loss of the services of the wife, but of her society.

In *Pasley v. Freeman*, 3 Term R. 51, the action was for making a false affirmation with intent to defraud. Lord KENYON held that the action would lie, although a new case, because there was *damnum cum injuria*. In *Ashby v. White*, 2 Ld. Raym. 938, decided in 1701, the action was against an officer for refusing to receive the plaintiff's vote. It was a case *primæ impressionis*, but Chief Justice HOLT, against the other judges, held that the action would lie at common law, on the ground that where there is a wrong there should be a remedy. In *Chapman v. Pickersgill*, 2 Wils. 145, the action was for falsely and maliciously suing out a bankrupt

commission, and it was held that the action would lie at common law on the same ground. In *Lumley v. Gye*, 2 El. & Bl. 216, the action was for enticing away a singer employed to sing in a theater, and in *Bowen v. Hall*, L. R. 6 Q. B. Div. 333, for enticing away a common laborer employed by the plaintiff.

These are all new cases predicated upon the same general principles of the common law. The argument is, if these actions can be sustained, and the action of the husband for the loss of his wife's *consortium*, why may not an action by or on behalf of the wife, for the loss of her husband's society, support, and protection, be maintained on the same principles? The reason is obvious and suggested above. The wife had no property in the *consortium* of her husband that is lost, nor any right to it that has been violated at common law. If the same able judges who were free to invent actions and to sustain new cases in an old action, and were quick to see the justice and humanity of all cases, could have found a right of action of the wife in such a case, we may believe that old forms and fictions would not have stood in the way. Her relative position and conditions as a wife at common law precluded the recognition of any such right of action. Under the civil law the husband and wife were distinct persons. The wife had a separate estate, the right to contract debts, and to bring actions for injuries. Her position was so nearly equal to that of her husband that her right to his society was recognized, and she had a remedy for its loss. But that remedy was confined to the ecclesiastical courts, and consisted only in having her husband returned to her. 1 Bl. Comm. 444. The wife had a right of action for defamation, by the civil law, but it was denied her in the common-law courts, because she would then have two actions or a double remedy. *Palmer v. Thorpe*, 4 Coke, 19; *Byron v. Emes*, 12 Mod. 106, 2 Salk. 694. Another reason was that an action for def-

---

Duffies vs. Duffies.

---

amation would not lie without special damages, and the wife could have no special damages.

In looking into the books of the common law we can find no such action or right of action of the wife, and they are both denied on principle as well as want of precedent. In the genial light of modern times, the true situation and position of the wife in the marriage relation are seen more clearly than formerly, and the place assigned her by the law and by common consent is much higher and more suitable to her intrinsic character, ability, and worth. She is placed on a nearer equality with her husband in her rights of person, property, and character. Under the just and genial laws of married women, she has resumed her position of a *feme sole*, as nearly as is compatible with natural law. It is not, therefore, surprising that so great and gallant, learned and humane, a judge and chancellor as Lord CAMPBELL should hold in *Lynch v. Knight*, 9 H. L. Cas. 577, that the wife had the same right to the *consortium* of her husband that he had to hers, and might allege special damage for its loss, caused by defamation of her character. The Lord Chancellor said that it was a case of first impression, and rested his opinion upon the great changes that had taken place in the position and relations of the wife under modern legislation. The opinion is by no means positive, and placed the right on the condition that it might be shown that the wife's "loss and injury" concurred. But the opinion is *obiter* in that case, and off-hand, and can hardly be accepted as authority. But the remedy of the wife was of no use or benefit to her, for she had to join her husband in the suit, and the damages recovered belonged exclusively to him. The plaintiff obtained judgment in Queen's Bench in Ireland. It was affirmed in Exchequer by a divided court, and reversed in the House of Lords, but on another question. It is, however, a decision that no such case had ever been sustained at common law.

In *Westlake v. Westlake*, 34 Ohio St. 621, it was held that the action would not lie at common law, and it was only allowed in Ohio by the statute that gave the wife a right of action for all violations of or injuries to the wife's "*personal rights*." Judge Cooley said he could see no reason why such an action might not exist, when the statute allowed her to sue for *personal wrongs*. Cooley, Torts, 228. " Personal rights " are not rights of person. The latter are physical, and the former are relative and general, and embrace all the rights any person may have and all the wrongs he may suffer. The court held correctly that the right to the society of her husband was a personal right, under the statute. It was so held also in *Clark v. Harlan*, 1 Cin. R. 418. It is said in the opinion that the wife had no such right at common law as a personal right, and therefore she could not sue, but she may by force of the statute. But it was held in *Mulford v. Clewell*, 21 Ohio St. 191, that, under the statute that allowed the wife to sue for "injury to her property or person," she could not bring this action for the *consortium* of her husband, nor at common law.

In many cases, as in *Ashby v. White*, 2 Ld. Raym. 938, it has been held that the action might be brought, because there should be ",no wrong without a remedy," as Chief Justice HOLT said in that case. But we must not forget that to entice away her husband was no *wrong* to the wife, and she had no right to his society, and the damages, if any, belonged to him at common law. In *Van Arnam v. Ayers*, 67 Barb. 544, it was held that the action would not lie at common law, nor under the statute, " for injury to her person and character," or her separate property. In *Jaynes v. Jaynes*, 39 Hun, 40, it was held that the action would lie under the statute of " civil procedure," but not at common law. In *Breiman v. Paasch*, 7 Abb. N. C. 249, it was held that the action would lie if not under the statute, under the authority of *Lynch v. Knight*, 9 H. L. Cas.

577, since the wife's disability to sue alone had been removed. In *Baker v. Baker*, 16 Abb. N. C. 293, the right is predicated upon the wife's separate property, and the right to sue for injury to her person and character. In *Logan v. Logan*, 77 Ind. 559, the action by the wife was for defamation, and she counted *per quod* for loss of the society of her husband. It was held that she might bring the action under the statute, of "injury to her person or character," but it could not be extended for loss of the society of her husband. In *Calloway v. Laydon*, 47 Iowa, 456, an action under the liquor law like ours in ch. 127, Laws of 1872, in which the wife might recover "for injury to her person, property, or means of support, and for all damages sustained, and for exemplary damages," it was held that she could not recover for the loss of her husband's society. And so in *Freese v. Tripp*, 70 Ill. 503, and in *Confrey v. Stark*, 73 Ill. 187, and *Mulford v. Clewell*, 21 Ohio St. 191.

The recent case of *Foot v. Card*, 18 Atl. Rep. 1027 (decided by the supreme court of Connecticut), is sustained by the authority of *Lynch v. Knight*, 9 H. L. Cas. 577, and on the ground that the wife is in a condition* of perfect equality with her husband, and "her right is the same as his in *kind, degree*, and *value*." It is said that even if the damages go to the husband, he would hold them as trustee for the wife. This case would be of greater authority if the expressions of the wife's absolute equality with her husband were less general, sweeping, and unlimited. The still more recent case of *Bennett v. Bennett*, 116 N. Y. 584, holds that the action will lie at common law, and cites *Lynch v. Knight*, 9 H. L. Cas. 577, and under the statutes which allow her to recover for "injury to her person or character," and give her separate property. It is held, in the leading opinion, that the wife can sue alone for all injuries to her person, and the damages recovered will belong to her.

It will be seen that there is very little conclusive authority on this question by the decisions of the courts in this country or in England. The doctrine may be said to be unsettled. Those courts which hold that the action will lie at common law do so because the statute has placed the wife on an equality with the husband or removed her disabilities. This would seem to imply that the action would not lie at common law, but by statute. Other courts hold that the right of action existed at common law, and would therefore lie as soon as the statute removed the wife's disability to sue alone. The question may be said to be a new one in this court, although the effect of some of our decisions may have a direct bearing upon it. The case of *Peterson v. Knoble*, 35 Wis. 80, was an action under the liquor law, commonly called the "Graham Law," to recover for injury to the "person, property, or means of support" of the wife. The husband was made drunk, and turned his wife out of doors. The question was raised whether damages for the injury to her *feelings* and for the *indignity* could be recovered in the action. The court cites *Mulford v. Clewell*, 21 Ohio St. 191, as holding that nothing could be recovered, except for actual violence, or physical injury to the person or health, not even for her disgrace or loss of society of her husband, and, while approving that case, holds that for injury to the feelings and for the indignity she may recover, because it is a part of the actual damages in the action, and connected with the injury to her person, and because "exemplary damages" may also be recovered under the statute. This limitation to the actual damages for the physical injury would seem to imply that the loss of her husband's society could not be recovered for under the statute. The cases in Ohio and Illinois, under the same law, hold that damages for the loss of the husband's society cannot be recovered, as we have seen. The case of *Dillon v. Linder*, 36 Wis. 344, was brought under the

same statute (ch. 127, Laws of 1872). While it was pend-
ing, and before trial, ch. 179, Laws of 1874, repealing the
above chapter, was passed, and the question was whether
by such repeal the action was defeated or abated, or saved
by sec. 33, ch. 119, R. S. 1858, now sec. 4974, R. S. It was
held, Chief Justice RYAN writing the opinion, that the sec-
tion referred to related only to " *new forms of remedy for old
rights*," and that the statute *created the cause of action* itself,
and that the repeal took away the right of action, and that
was not saved by the statute, and was therefore gone. The
important and pertinent effect of this decision is that the
statute *created* the cause of action or *right of action* to re-
cover damages by reason of any person causing, through
drunkenness of the husband, any injury to the wife's "per-
son, property, or means of support, and any damages sus-
tained, and exemplary damages." Then it follows that such
a cause of action, or right of action, did not exist at com-
mon law, but is purely statutory. If, then, such damages
could not be recovered at common law, much less could a
more remote and speculative class of damages, for the loss
of the husband's society by such means, be recovered at
common law, or without a statute creating such a cause of
action or right of action. It follows also, as before said,
that the right of action of the wife in such a case did not
exist at common law. It was not a mere common-law dis-
ability to bring the action.

The only two statutes now in force in this state allowing
the wife to bring an action alone and to have the damages
recovered her own separate property, are said ch. 179, Laws
of 1874 (sec. 1560, R. S.), which gives her an action against
any person who causes, through the drunkenness of the
husband, "injury to her person, property, or means of sup-
port;" and ch. 99, Laws of 1881, which gives her an action
for any "injury to her person or character." According
to common reason and the decided weight of authority,

neither of these statutes gives the wife any right of action for the *consortium* of her husband. The loss of her husband's society is not an injury to her person, property, means of support, or character, and such an action cannot be forced within the terms or spirit of the statutes, by the most strained and liberal construction. Such a right of action does not exist by law, nor can it be inferred from the ameliorated and changed conditions of the wife, and her equality with her husband, produced by modern legislation in her behalf. Whatever equality of rights with her husband she may have, it is not proper to say that " her right to the society of her husband is the same in *kind, degree*, and *value*, as his right to her society." There are natural and unchangeable conditions of husband and wife that make that right radically unequal and different. The wife is more domestic, and is supposed to have the personal care of the household, and her duties in the domestic economy require her to be more constantly at home, where the husband may nearly always expect to find her and enjoy her society. She is purer and better by nature than her husband, and more governed by principle and a sense of duty and right, and she seldom violates her marriage obligations, or abandons her home, or denies to her husband the comforts and advantages of her society by any inducement or influence of others, without just cause. Actions against others for enticing her away from her home and her husband's society are not frequent. She is protected from such wrong, not only by her integrity of character, but by greater love for her family and the comforts and genial influences of home life. With the husband the case is different. He may not be his wife's *superior* in the sense of the common law, or in anything, and may be her inferior in many things, but he is charged with the duty of providing for, maintaining, and protecting his wife and family. He is engaged, for this

purpose, in the business and various employments of the outside world, that must necessarily, more or less, deprive his wife of his society. The exigencies of even his legitimate business may keep him away from her and his home for months or years. He is exposed to the temptations, enticements, and allurements of the world, which easily withdraw him from her society, or cause him to desert or abandon her. Others may entice or induce him to do many things, for business or pleasure, which may deprive his wife of his society. The wife had reason to expect all these things when she entered the marriage relation, and her right to his society has all these conditions, and is not the same in "degree and value" as his right to hers. For these reasons, and many others, if actions by the husband for the loss of the society of his wife are not frequent, actions by the wife for the loss of his society would be numberless. This right of action in the wife would be the most fruitful source of litigation of any that can be thought of. The loss of his society need not be permanent, for a cause of action. For a longer or shorter time, if caused by improper inducements or enticements, the right would accrue. There would seem to be very good reason why this right of action should be denied. The justice and advantages of such an action are at least doubtful. For these reasons, this action cannot be sustained on the ground of the wife's equality in right, or of "a remedy for every wrong," or of the coincidence of "injury and damage," or of the constitutional right of a remedy for "injury to person, property, or character."

The right is, at least, so doubtful that the courts may well await a direct act of the legislature conferring it. There are questions of public policy and expediency involved that may well be considered by the legislature. The court should have sustained the objection of the defendant to

any evidence under the complaint, on the ground that it did not state a cause of action.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded with direction to dismiss the complaint.

CASSODAY, J.   I am not prepared to give my assent to the opinion of the court filed in this case.   There seems to be high authority for saying that at common law an action for damages could be maintained for the alienation and loss of the affection and society of the husband from his wife. *Lynch v. Knight,* 9 H. L. Cas. 577; *Bassett v. Bassett,* 20 Ill. App. 543; *Foot v. Card,* 18 Atl. Rep. (Conn.), 1027; *Bennett v. Bennett,* 116 N. Y. 584, affirming *S. C.* 41 Hun, 640; and *Mehrhoff v. Mehrhoff,* 26 Fed. Rep. 13.   In such action, however, it was necessary for the husband to join, as it was said, for conformity's sake.   *Ibid.*   So, in an action for damages for a tortious injury to the wife, it was held necessary in this state, prior to the recent statute on the subject, for both husband and wife to join in the action. *Gibson v. Gibson,* 43 Wis. 23; *Meese v. Fond du Lac,* 48 Wis. 323; *Shanahan v. Madison,* 57 Wis. 276.   But, in addition to the rights of property and business previously possessed, "ch. 99, Laws of 1881, gave to a married woman, as though she were *sole,* the right to maintain an action for *any injury to her person or character,* and took from the husband all right to or control over such action, and all right to or interest in any judgment recovered therein." *Shanahan v. Madison,* 57 Wis. 276.   Prior to that enactment, such action for personal injury to the wife, if brought in her own name alone, could only be defeated on such ground by showing the fact of such marriage in abatement, and then proving the same.   *McLimans v. Lancaster,* 63 Wis. 596.   That action was commenced in the name of the wife alone, some time prior to that statute, but no objection

on that ground was taken by plea in abatement or otherwise until after two trials at the circuit court and the case had been brought to this court on a second appeal; and it was held, in effect, that the irregularity in commencing the suit in the name of the wife alone was cured by that statute. In so holding, this court followed *Weldon v. Winslow*, L. R. 13 Q. B. Div. 786, where BRETT, M. R., speaking for the court, said: " For such a cause of action no action could ever have been brought by the husband alone without joining his wife as a plaintiff. . . . *The injury to the wife was the meritorious cause of action*, and, if she had died before the commencement of the action, the husband would not have been entitled to sue. If damages should be given, they would belong, in the first place, to the wife alone; and if they should not be reduced to possession by the husband, and he should die, the damages would be hers, and would not go to his executors." *McLimans v. Lancaster*, 63 Wis. 600. In that case the right of action had been created and given by statute. In this state it has frequently been held that compensatory damages include mental suffering, and that no distinction is to be made between other forms of mental suffering and that which consists in a sense of wrong or insult arising from an act really or apparently dictated by a spirit of wilful injustice, or by a deliberate intention to vex, degrade, or insult. *Craker v. C. & N. W. R. Co.* 36 Wis. 658; *Grace v. Dempsey*, 75 Wis. 323, and cases there cited. Within the rulings of this court in the cases cited, no good reason is perceived why this action is not maintainable; especially is this so if such right of action existed in favor of the husband and wife jointly at common law, as indicated in the authorities cited. I have not had the time to verify, by careful examination, whether that is so or not.