## SMITH v. WOMACK.   (No. 11272.)

(Court of Civil Appeals of Texas. Fort Worth. Jan. 17, 1925. Rehearing Denied Feb. 14, 1925. Writ of Error Refused March 11, 1925.)

1. **Constitutional law** ☞90—**Restraining defendant from associating or communicating with plaintiff's husband held not violative of constitutional guaranty of freedom of speech.**

An injunction restraining defendant from visiting with or accompanying plaintiff's husband, and in person, by telephone, telegraph, or writing, from communicating with plaintiff or her husband, and from annoying plaintiff by attentions to her husband, is not in violation of Const. U. S. Amend. 1, or Const. Tex. art. 1, § 8, by curtailing freedom of speech.

On Motion for Rehearing.

2. **Husband and wife** ☞207—**Wife may sue alone to enjoin another from associating or communicating with her husband.**

A married woman may sue alone to enjoin another from associating with or communicating with her husband, where the husband refuses to join as plaintiff, or in fact is incapacitated by reason of his own wrongdoing to maintain suit as plaintiff, and fact that wife did not ask for damages, but only for writ of injunction, does not affect her capacity to sue alone.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Petition for injunction by Mrs. Gene Womack against Mrs. May Smith and another. From a judgment granting injunction as against the named defendant, she appeals. Affirmed.

Mays & Mays, of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for appellee.

BUCK, J. Plaintiff, Mrs. Gene Womack, filed a petition for injunction, seeking to restrain her husband, B. G. Womack, and Mrs. May Smith, from "meeting each other, visiting each other in any manner, way, means, and place, from in any way communicating with each other, either in person, by telephone, in writing, and by telegraph, and from conversing with each other, and from being in each other's company, at any time or place." She alleged: That she married the defendant, B. G. Womack, on October 2, 1910, and that she had lived with him continuously since said date up to October 21, 1924; the suit being filed October 23d. That up to the time that defendant Mrs. May Smith met Mr. Womack the latter enjoyed the esteem and confidence and good wishes of his friends and acquaintances in Fort Worth, and enjoyed a good reputation for honesty and fair dealing, and for uprightness and correct living, and that plaintiff enjoyed the reputation that her husband bore, and had lived an honest, upright, and moral life. That after her husband met Mrs. Smith she and he began a series of clandestine meetings, and that Mrs. Smith met the plaintiff's husband at numerous times and at different places, without the knowledge or consent of plaintiff, and that later Mrs. Smith began a series of telephone conversations with said B. G. Womack, and would call up and talk to said Womack over the telephone numerous times, and would talk to plaintiff over the telephone many times. That she would call B. G. Womack as many as 20 or 30 times a day, and when said Womack would refuse to answer, or was not at home, she would annoy and harass the plain-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
271 S.W.—14

tiff, and demand that she be allowed to talk to him. That the defendant Mrs. Smith finally became so bold and brazen in her affected love and affection for the plaintiff's husband as to come to his place of business and send her little child to call him out, and that at one time she came to the ranch where the Womacks were living, and would follow him up, no matter where he would go, and said she was going to have him and live with him, and that she was going to have plaintiff's husband, no matter what happened.

Plaintiff alleged: That such conduct on the part of defendant Mrs. May Smith had injured plaintiff's health, and that she had suffered irreparably from such actions and conduct, and that she could no longer stand the humiliation, shame, and disgrace, and the alienation of her husband's affections. That prior to his acquaintance with Mrs. Smith, her husband, B. G. Womack, and she had been happy and contented in their married life, enjoying each other's society, but that by reason of the course of conduct of Mrs. Smith the complete alienation of her husband's affections was threatened. She prayed for an injunction against both of the defendants, but the trial court dismissed the suit as to B. G. Womack and enjoined defendant Mrs. May Smith "from visiting with or accompanying B. G. Womack, and in person, by telephone, telegraph, or writing, or sign or symbol, from communicating with the said B. G. Womack or Mrs. Gene Womack, and from harassing or annoying the plaintiff by attentions to B. G. Womack." The plaintiff pleaded that she had no adequate remedy at law to prevent the acts of defendant Mrs. May Smith, but she asked for no damages. She also pleaded that her husband refused to join her.

Two questions are presented in this appeal: (1) Does the suit present a cause of action which may be prosecuted by a married woman without the joinder of her husband? (2) Is the remedy sought in violation of Amendment 1 of the United States Constitution, or of section 8, art. 1, of the state Constitution, by curtailing freedom of speech?

[1] Discussing question 2 first, and quoting from Schenck v. U. S., 249 U. S. 47, 39 S. Ct. 247, 63 L. Ed. 470:

"We admit that in many places and in ordinary times the defendants, in saying all that was said in the circular, would have been within their constitutional rights. But the character of every act depends upon the circumstances in which it is done. Aikens v. Wisconsin, 195 U. S. 194, 205, 206, 49 L. Ed. 154, 159, 160, 25 S. Ct. 3. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater, and causing a panic. It does not even protect a man from an injunction against uttering words that may have all the effect of force. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 439,

55 L. Ed. 797, 805, 34 L. R. A. (N. S.) 874, 31 S. Ct. 492."

See the last-cited case, as published in 34 L. R. A. (N. S.) 874, for a full discussion of the power of a court to enjoin the speaking or publication of language reasonably calculated to harm and injure another. Preventing a defendant, in a suit for alienation of a wife's affection, from writing to her or associating with her, is not a derogation of freedom of speech, press, or locomotion. Ex parte Warfield, 40 Tex. Cr. R. 413, 50 S. W. 933, 76 Am. St. Rep. 724. In Ex parte Tucker, 110 Tex. 335, 220 S. W. 75, our own Supreme Court, in an opinion by Chief Justice Phillips, held:

"Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character. When they do, they amount to conduct, or threatened conduct, and for that reason may properly be restrained."

We feel that from these authorities, and many others which might have been cited, we cannot hold that the injunction granted in this case is in violation of the provision of the United States Constitution, or of the state Constitution, to which reference is made.

Nor do we think that the other question in issue must be so answered as to prohibit a married woman from bringing this kind of action without being joined by her husband, where she alleges that he refused to join her. In Nickerson and Matson v. Nickerson, 65 Tex. 281, our Supreme Court held that a wife had capacity to bring a suit alone, where her husband refused to join her, against another for a tort, though it was held in that case that the husband, joining with the other defendant in the commission of the tort, gave the wife no right of action against her husband. But the court affirmed the judgment against Matson, the other defendant, and dismissed the cause of action as against the husband. It is true that the facts show that the plaintiff had secured a divorce from her husband after the suit was filed, but her right of recovery against Matson did not depend upon her becoming a feme sole by reason of the divorce.

In Burnett v. Cobb, 262 S. W. 826, the Amarillo Court of Civil Appeals said:

"(1) Whether the plaintiff may legally maintain this suit for damages for the alienation of her husband's affections. * * * We will discuss these questions in the order stated.

"1. While there are a few authorities to the contrary, the overwhelming weight of modern authority is to the effect that the wife, under laws similar to those of this state, may now maintain a suit such as is here prosecuted. Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, and notes, 114 Am. St. Rep. 605, 6 Ann. Cas. 658; Sims v. Sims, 79 N. J. Law, 577, 76 A. 1063, 29 L. R. A.

(N. S.) 842, and notes; Weber v. Weber, 113 Ark. 471, 169 S. W. 318, L. R. A. 1915A, 67, Ann. Cas. 1918C, 743; Speer's Law of Marital Rights, §§ 94 and 95; Nickerson v. Nickerson, 65 Tex. 281. While the very fact case has not been decided in this state, the decision in the case of Nickerson v. Nickerson, supra, is based on analogous facts, and when read in connection with the authorities above cited leaves no ground for serious question as to the plaintiff's right to maintain this suit."

In Speer's Law of Marital Rights in Texas, § 94, the author says:

"The great weight of authority under the modern statutes of the various states of the United States is to the effect that the wife is entitled to maintain in her own name an action for the alienation of the affections of her husband. But the holdings are not entirely uniform, and are based for the most part upon what are construed to be enabling statutes. An unmarried woman, as has been seen, may maintain an action for damages against a man for a breach of a promise to marry her, upon the theory that she, by such breach, has been injured by the loss of the society and support and the interest in his property which the defendant would have brought to her upon a consummation of the agreement to marry. It would appear for much stronger reasons that the wife could after marriage maintain an action against one for damages resulting to her on account of causing an alienation of her husband's affections and the loss of his society and support, if she is not incapacitated by her coverture. At common law, on account of the unshakable fiction of marital unity, the right of a married woman to prosecute an action for personal injuries was denied. Under that law a cause of action for such injuries, whether committed before or after her marriage, ordinarily belonged to the husband; but if, for any reason, her ownership of the cause of action was recognized, yet, because of her disability, she had no remedy, unless the husband joined in bringing the suit. While marriage was an absolute gift to her husband of her goods and chattels, it was only a qualified gift of her choses in action, depending upon the condition that he reduce them to possession during coverture, or otherwise upon his death they would belong to her. Mr. Bishop also says that on the death of the husband the wife's choses in action, not reduced by him to possession, survive to her. She takes them, not as heir, personal representative, or administratrix, but they revert to her in her own right. And this doctrine applies as well to postnuptial as to antenuptial choses in action. So that, if at common law a married woman had a cause of action against a person who wrongfully alienated her husband's affections, by reason of her coverture she could not prosecute the same in her own name. But if the husband died, or there was an absolute divorce, she might then maintain the suit as a feme sole. Such was the rule at common law.

"With us, however, the rule is that damages recoverable for an injury inflicted upon the wife are community property, and that generally the husband, being entitled to the control of that estate, is the only person authorized to maintain a suit for the recovery of such damages. The refusal of the husband to bring such suit does not authorize the wife to sue in her own name, but there must exist exceptional reasons, such as his abandonment, prolonged absence, or other wrongful abdication of authority, to authorize her to sue. Now it may be conceded that damages flowing to the wife for the wrongful alienation of the husband's affections would constitute community property under our statutes, yet, if it be of that character, the husband's attitude is such that he cannot sue for them. No court would permit him in his own right to recover damages of another for the doing of a thing to which he has himself fully consented, and for the doing of which he is equally at fault. Furthermore, if the husband has deserted the wife without fault upon her part, he is no longer entitled to the exclusive control of the property that belongs to them in common, but her rights, to say the least, are the equal of his; and it would follow that, though such damages are community property, every reason exists for allowing the wife, when deserted by the husband without fault upon her part, through the willful interference of another, to maintain an action for her damages in her own name against such person interfering. The reasons for requiring the husband to sue not existing, the rule itself ceases.

"But it is by no means clear that damages for such an injury would be community property at all. In a general way, it is said that damages for an injury to a wife's person or reputation are community. So they are; but where those damages are produced by the wrongful act of the husband, jointly with another, it has been held that they are not community. The wife has in them a peculiar right, as distinguished from that of her husband; indeed, he has no rights in them whatever; certainly none that he can enforce, for he cannot profit by his own wrong. Such damages, then, have the elements of separate property, and, if such, the wife can sue for them alone. If, under a strict construction of our statutes, they are community, the husband is in no position to sue for them, nor justly to deny his wife the right to do so, and she ought not, under our liberal rules, to be denied a remedy for injuries so great. While with us there is no express enabling statute authorizing a wife to maintain such an action, yet it is not thought that such a statute is necessary, as the rules of the common law have not been incorporated in our marital system, but their rigor has been greatly relaxed, and they are in many instances directly antagonistic to the well-defined rules of our later marital jurisprudence. In those states which have adopted the common-law marital system, enabling statutes are doubtless necessary; in ours, the spirit of our system and the trend of our decisions foster the most jealous protection of the rights of our married women, and with few exceptions present to them an open court for the redress of any injuries they may receive."

In Davis v. Davis, 186 S. W. 775, the Texarkana Court of Civil Appeals says:

"A married woman has as much interest in the community property as her husband, and has an equal right to its beneficial use. The right of the husband to sue alone for its recovery is incidental to his right to manage and

control that class of property, and not upon any legal disability of the wife by reason of her coverture. The statutory right of the husband to exclusively manage and control the community property is based upon the assumption that he will discharge his obligations as the head of the family; that he will live with and support his wife and children, or be ready and willing to do so. Wright v. Hays, 10 Tex. 131, 60 Am. Dec. 200; Dority v. Dority, 96 Tex. 215, 71 S. W. 950, 60 L. R. A. 941, and cases there cited. When he abandons his duty, repudiates his connubial and parental obligations, and compels his wife to rely upon her own efforts, there is neither reason nor justice in continuing his statutory authority over the common property. Hence an action by an abandoned wife alone is not so fundamentally defective that her petition will be disregarded and her suit treated as a nullity."

In Coss v. Coss, 207 S. W. 127, by the San Antonio Court of Civil Appeals, Chief Justice Fly, in his usual emphatic way, says:

"It would be intolerable and a blot upon the civilization of our age to entertain the proposition that a married woman under such circumstances would be incapacitated from prosecuting a suit against her husband to protect her property from being squandered on the mistress of such husband. Such medieval doctrine finds no place in a system of jurisprudence which is endeavoring to keep step with the enlightened conscience of civilization and the benign conceptions of the rights of women that are entering the hearts and permeating the thought of progressive people throughout the world. Justice demands that, when a husband has proven untrue to the trust confided in him by the laws of the state in the management of the community property, and is ruthlessly defrauding the lawful wife of her means of support and lavishing her property on the companion of his lust, the outraged wife should have the courts thrown open for her protection. Whatever may have been the common law of decisions of the past, Texas will not deny the right of protection to a married woman, under the facts alleged, both as to her separate estate and her interest in the community property of herself and husband."

But the appellant urges that, while there may be authority for the maintaining of a suit for damages by the wife alone, yet in the instant case the plaintiff did not ask for damages, but asked only for a writ of injunction. We can see no distinction as to the wife's capacity to bring a suit alone against a defendant for alienating the affections of her spouse, and the deprivation of the wife's right to the care and comfort and enjoyment of her husband's society, and asking for damages by reason of the wrongful acts of the defendant, and a case where she waives all question of a pecuniary return to her of the value of those precious things of which she has been deprived, and merely asks that the wrongdoer be restrained from continuing and repeating the acts and conduct by means of which plaintiff has been injured. Such a doctrine would be tantamount to a holding that one who had a home, with carefully tilled crops on it, ready for harvest, would have the right to sue in damages an enemy who was seeking to destroy a dam or dyke, and thereby let the floods inundate such farm and crops and utterly destroy them, but would not have the capacity or right to prevent such acts by an injunction. We do not believe that any such distinction exists in law or in equity, and that a wife has just as much capacity and right to bring an injunction suit against one seeking to destroy the sanctity of her home and alienate the affections of her husband as she has to bring a suit for damages after the alienation has been completed and the fell wrong done.

In our judgment, no valid reason is offered or exists why the judgment of the trial court should not be affirmed; and it is accordingly so ordered.

### On Motion for Rehearing.

Appellant, in her motion for rehearing, cites a number of cases, some of which we will notice. Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921, involved a suit by the wife against the husband for a tort, alleged to have been committed by the husband upon his wife. The suit originated in the District of Columbia. In that case the Supreme Court, by a divided court, decided that under the District of Columbia Code no such suit could be maintained. From the conclusion of the majority three of the judges, to wit, Justices Harlan, Holmes, and Hughes, dissent. But in Texas our courts have decided that a wife may not maintain a suit against her husband for a tort committed by him on her. At least the majority of us think that Nickerson v. Nickerson, 65 Tex. 281, as well as Gowin v. Gowin, 264 S. W. 529, by this court, settles the question in this state.

Drake v. Drake, 145 Minn. 388, 177 N. W. 624, 9 A. L. R. 1064, by the Supreme Court of Minnesota, involved the right of the husband to maintain an injunction against his wife, to restrain her from talking about him, abusing him, and "nagging" him. The court decided that a husband could not maintain this character of a suit against his wife, under the Minnesota statutes. We do not think the Minnesota decision is in conflict with our holding in this case.

The case of Doe v. Roe, 82 Me. 503, 20 A. 83, 8 L. R. A. 833, 17 Am. St. Rep. 499, held that an action by a married woman for debauching and carnally knowing her husband, and for alienating his affections, cannot be maintained against another woman. To the same effect is Duffies v. Duffies, 76 Wis. 374, 45 N. W. 522, 8 L. R. A. 420, 20 Am. St.

Rep. 79. But Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 17, 6 L. R. A. 553; Foot v. Card, 58 Conn. 1, 18 A. 1027, 6 L. R. A. 829, 18 Am. St. Rep. 258; Seaver v. Adams, 66 N. H. 142, 19 A. 776, 49 Am. St. Rep. 597; Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605, 6 Ann. Cas. 658; Sims v. Sims, 79 N. J. Law, 577, 76 A. 1063, 29 L. R. A. (N. S.) 842; Weber v. Weber, 113 Ark. 471, 169 S. W. 318, L. R. A. 1915A, 67, and Ann. Cas. 1916C, 743—and in fact a large majority of the several state jurisdictions, especially the modern authority, are to the contrary of the case of Doe v. Roe, supra.

The case of Snedaker v. King (Ohio) 145 N. E. 15, is relied on by appellant to sustain her contention. Four of the seven members of the Supreme Court of Ohio held that, quoting from the syllabus, "in alienation suit, decree restraining defendant from associating with plaintiff's husband, going near, or communicating with him," was an unwarranted extension of equity jurisdiction. One of the concurring justices, Judge Allen, explained her concurrence, in part, in the following words:

"The order passes all bounds in its lack of limitation. Under this order, what is Miss Snedekar to do if she passes King upon the street? Must she cross the street in order not to go 'near him * * * at * * * any * . *. * place where said Homer King may be,' or may she stay upon the same side of the street and pass him? Under such circumstances, may she say 'Good morning' to him, or in so doing will she be violating the order that she is not to communicate with King, 'by word'?"

Chief Justice Marshall and Associate Justice Day each wrote quite lengthy dissenting opinions, in which they discussed at length the condition of the authorities involved, and each was of the opinion that the judgment of the trial court should be affirmed. Each cited Ex parte Warfield, 40 Tex. Cr. R. 413, 50 S. W. 933, 76 Am. St. Rep. 724, cited in the original opinion herein, and showed that in a large number of the states, including Ohio itself, the decisions had upheld the injunctive relief of the character therein shown. Justice Conn, of the court, did not sit.

[2] Perhaps in a majority of the cases affecting this question, the statutory law of the individual state is involved and the statutes construed. We believe that our statutes, construed under the light of advanced civilization and the increasing regard for the legal rights of our married women, do not preclude the maintenance of this character of a suit by a married woman alone, where her husband refuses to join as plaintiff, and in fact is incapacitated by reason of his own wrongdoing to maintain the suit as plaintff.

The motion for rehearing is overruled.