Marshall, C. J.,
 

 dissenting. The statement of facts in the brief per curiam opinion shows that this is a case where a lawful, dutiful wife has invoked the aid of a court .of equity to protect her marriage contract, her home, and her little brood of infant children, against a “vampire” who persists in her efforts to win the husband and father from the performance of his duties to his home and family, tit must be kept clearly in mind in a discussion of this case that the husband is not a party to the suit, and that the wife, Grace King, brings the action solely against the vampire, Jessie L. Snedaker.
 

 The case comes to this court in a very unusual and extraordinary manner. The amended petition of the wife was filed May 15, 1922, and, after motions were filed thereto and overruled, a demurrer was filed on October 24, 1922, which was promptly overruled by the court on November 3, 1922. Thereafter, on December 1, 1922, Miss Snedaker filed an answer which was a general denial. Upon the issues thus joined the parties went to trial; a jury being waived and the case being tried to the court upon the questions of injunction and damages. After full hearing, and it appearing that Miss Snedaker was not financially responsible, and Mrs. King having offered to waive any dam
 
 *233
 
 ages above $5, judgment was entered in the sum of $5. As a part of the same- judgment the injunction was made perpetual. Miss Snedaker promptly prosecuted error to the Court of Appeals, but it is significant- that- she did not see fit to procure a bill of exceptions, and that she was content to rest her error proceedings upon the record without a bill of exceptions, and it is well settled by the practice of this court that she therefore presented in the Court of Appeals, and also in this court, only such alleged error as the petition, the answer, and the judgment of the court should disclose.
 

 The only assignment of error in .the petition in error filed in this court is that the Court of Appeals erred in refusing to reverse the judgment of the common pleas court. The unwillingness of Miss Snedaker to submit a -transcript of the testimony in the trial court for the consideration of the Court of Appeals on review leaves her in no position for charitable consideration at the hands of this court. By reason of her financial irresponsibility, and -the judgment for damages having been placed at the nominal sum of $5, Miss Snedaker has suffered practically no damage at the hands of the trial court, except the deprivation of the society of the husband of another woman. It is not by any means to her credit that she has prosecuted this action to the second court of review, seeking to reverse a judgment which takes nothing from her except the right to consort with this husband and father.
 

 The lower courts having issued a perpetual injunction, this court is placed > in the rather un
 
 *234
 
 enviable situation of restoring to Miss Snedaker certain privileges which can be of no possible benefit to the person who seeks them, and which clearly appear by this record to be of irreparable damage to the lawful wife. This court assumes the further dangerous responsibility, in reversing the judgment of the lower court, of acting without the benefit of the evidence upon which the trial court reached its judgment.
 

 The very brief per curiam opinion of the majority of this court deserves a careful analysis.
 

 The first sentence of the opinion is that the decree is “an extreme instance of government by injunction.” This rather odious expression had its origin in the widespread criticism of injunction suits arising out of labor strikes, where it was claimed that the government was trying to maintain law and order by civil processes. Manifestly, that odious expression has no proper application to the case at bar. The very next sentence of the per curiam opinion shows that it has no application, because the second sentence states that this case is an attempt to “govern, control, and direct personal relations and domestic affairs.” Again the majority opinion is inaccurate. The husband not being made a party to this suit, there can be no possible effort by judicial process to govern, control, and direct domestic affairs. This case only seeks to prevent interference on the part of a third party with the obligations of a contract, and to prevent such third party from inducing one of the parties to a lawful contract to commit o breach thereof.
 

 The third sentence of the per curiam opinion is
 
 *235
 
 equally inaccurate. The decree of the trial court does not require Miss Snedaker to remain “away from any place where plaintiff’s husband may be.” On the contrary, as clearly shown by the quotation from the journal entry appearing in the statement of facts, Miss Snedaker is only enjoined “from visiting or associating with Homer King, husband of plaintiff, or going to or near him at plaintiff’s home or elsewhere, or any other house or place where said Homer King may be.” A careful analysis of this sentence shows that the forbidden feature is “going to or near him,” and that she is not forbidden to go to any public gathering where they might by chance appear at the same time, and that, if such chance meeting should occur, the injunction order would be fully obeyed by her refraining from going to or near him or communicating with him.
 

 It is to be feared that the per curiam opinion seeks to treat this matter from a facetious standpoint, and that it fails to look upon this matter in the seriousness which it deserves.
 

 The fourth sentence of the per curiam opinion concedes that it would be a more extreme case if the husband had been made a party defendant and a court of equity should seek by a decree of mandatory injunction to require the husband to discharge his marital duties.
 

 The fifth sentence states that ample and adequate provision has been made by statute to require the husband to discharge all his marital obligations to the wife and children, and if that sentence had omitted the words “ample and adequate” we would have no quarrel with the fifth
 
 *236
 
 sentence. It is true that the statute seeks to make provisions to regulate the duties of a husband and father, but surely no one would deliberately claim that such regulations are ample, and adequate to meet the requirements of the case.
 

 The sixth sentence states that there is no averment that the husband has failed in any of these particulars. In this the opinion of the majority is clearly in error. In the amended petition it is clearly stated that, by reason of the acts of Miss Snedaker, the wife and mother has been “deprived of the love, esteem, affection,
 
 support,
 
 and peaceful consortium of her said husband.” It further charges that she will continue to be thus deprived unless relief is granted by the court. The judgment of the trial court contains the following finding:
 

 “On consideration whereof, the court find on the issues joined for the plaintiff, and that the allegations of the petition, and each of them, are true.”
 

 It therefore follows that the seventh sentence of the per curiam opinion is unsupported by the facts.
 

 The final paragraph of the per curiam opinion states in a few lines a discussion of the legal principles involved, and again makes it clear that the majority of the court is proceeding upon the wrong assumption that there is an attempt to regulate and control domestic relations, and states that such an attempt “is not supported by authority, warranted by sound reason, or in the interest of good morals or public policy.” It shall be our task to show that there is authority for such a proceed
 
 *237
 
 ing and that it is warranted by sound reason, but we shall not seriously attempt to inquire whether it is in the interest of good morals or public policy, because, if there is authority and reason for the exercise of such jurisdiction, a court of equity should not inquire in each individual case into the question of good morals or public policy. It must be borne in mind that equity is a separate system of jurisprudence, having its own precedents and principles, and, if there is to be any uniformity in the administration of courts of equity, such precedents and principles must be followed, and it must not be left to the discretion of the chancellor in each individual case to determine for himself whether upon grounds of good morals or public policy he may decline to entertain the cause. In other words, courts of equity are not inquisitorial, but remedial.
 

 The remaining reason set forth in the majority opinion is based solely upon the doubt therein expressed of the ability of a court of equity to adequately enforce its order by contempt proceedings. Upon this subject, it need only be stated that contempt proceedings are the only method of enforcing injunctive process, and that reason is therefore not a whit more applicable to this particular case than it is to any other case where injunction is recognized as a proper extraordinary remedy.
 

 Let us first inquire whether the orders of the lower courts in this case are supported by authority, and whether they are warranted by sound reason. It requires no argument or citation of authority to show that the marriage relation is
 
 *238
 
 based upon civil contract. It follows, as the night the day, that the parties to such a contract are entitled to protection against unlawful interference with the obligations of that contract on the part of third persons. If this action were for damages alone, instead of damages and injunction, it would be conceded on all sides that the wife is entitled to maintain an action to recover a money judgment for any damages she may have suffered. It is equally well settled that the wife would be entitled to compensation, not only for loss of support, as alleged in the petition and as found by the trial court, but that she would also be entitled to recover damages for loss of consortium. Both of these elements are recognized as elements of the marriage contract and as rights of property. Any person who interferes with the marriage relation, or who seeks to induce either party to the marriage relation to commit a breach thereof, is held liable to respond in damages for such injury. And this is entirely separate and distinct from any statutory legal remedy which may be provided for the regulation and control of the marriage relation. Such an action can be maintained against any person who thus interferes, even though the offending party to the marriage relation may be entirely consenting, or even a party thereto. It is very clear, therefore, that, while certain provisions have been made by statute whereby a husband and father may be required to discharge certain marriage obligations imposed upon him by that relation, it is at the same time clearly recognized that such provisions are not ample and adequate; otherwise there would be no occasion for
 
 *239
 
 calling upon third persons to respond in damages. It is not necessary to cite any of a large number of authorities which have dealt with this subject, but we shall briefly discuss two cases oí this court where the principles have been laid down clearly, which principles will be quite sufficient for the purposes of this discussion.
 

 The earliest of these two cases is
 
 Westlake
 
 v.
 
 Westlake,
 
 34 Ohio St., 621, 32 Am. Rep., 397. The first syllabus declares:
 

 “A
 
 wife may maintain an action for the loss of the society and companionship of her husband, against one who wrongfully induces and procures her husband to abandon or send her away. ’ ’
 

 In the opinion by an elaboration of argument it is shown that the wife may maintain this action in her own name, without joining her husband.
 

 In the case of
 
 Flandermeyer
 
 v.
 
 Cooper,
 
 85 Ohio St., 327, 98 N. E., 102, 40 L. R. A. (N. S.), 360, Ann. Cas. 1913A, 983, this court decided that a wife might maintain an action against a person who furnishes morphine to her husband, he being addicted to the morphine habit, and as a result of drugs being so furnished the husband becomes impaired in mind, rendering it necessary to confine him in an insane asylum. The recovery was placed upon the ground of loss of consortium, and the first paragraph of the syllabus is as follows:
 

 “Husband and wife are entitled to the affection, society, co-operation and aid of each other in every cpnjugal relation, and either may maintain an action for damages against any one who wrongfully and maliciously interferes with the marital rela
 
 *240
 
 tionship, and thereby deprives one of the society, affection, and consortium of the other.”
 

 Much is found in the opinion of Judge Donahue in that case to show that these rights are not mere personal rights, and the mere fact that a recovery is permitted sufficiently shows that they are recognized as property rights.
 

 The eases are quite numerous in Ohio and elsewhere which recognize an action for damages for alienation of the husband’s affections. Surely no further argument is needed to show that an action for damages lies in the instant case, and it is not claimed that the small judgment for damages is erroneous.
 

 It is, of course, conceded that it is not every case where an action for damages will lie which may be made the subject-matter of injunction. It is only in those cases where damages are an inadequate remedy. It is true that, excepting one or two cases, the courts have not dealt with this identical proposition, and it is therefore a novel proposition which is presented to this court for determination. On the other hand, I am of the opinion that the principle involved in this case is exactly identical with that involved in that numerous class where equity has not hesitated to exercise its jurisdiction to protect a contract right against undue influence by persons not parties thereto. A contract right has uniformly been held to be a property right, and it has been further held that inducing a breach of such a contract is an actionable tort. While injunction does not lie in all such cases, it is very generally held that an injunction will lie to restrain third persons from inducing the
 
 *241
 
 breach of a lawful contract by one of the parties thereto, when it will result in irreparable injury. This has been held, regardless and irrespective of whether the defendant is insolvent, but the cases are quite uniform in holding that injunction will -lie when the defendant cannot be made to respond in damages. These principles have been enforced uniformly in labor strikes, and many cases decided in recent years by the Supreme Court of the United States were quoted by this court with approval in the case of
 
 LaFrance Electrical Construction & Supply Co.
 
 v.
 
 International Brotherhood of Electrical Workers,
 
 108 Ohio St., 61, 140 N. E., 899.
 

 The leading case on that subject is
 
 Truac
 
 v.
 
 Raich,
 
 239 U. S., 33, 36 Sup. Ct., 7, 60 L. Ed., 131, L. R. A., 1916D, 545, Ann. Cas., 1917B, 283, and more recent authorities are
 
 American Steel Foundries
 
 v.
 
 Tri-City Central Trades Council,
 
 257 U. S., 184, 42 Sup. Ct., 72, 66 L. Ed., 189, 27 A. L. R., 360;
 
 Hitchman Coal & Coke Co.
 
 v.
 
 Mitchell,
 
 245 U. S., 229, 38 Sup. Ct., 65, 62 L. Ed., 260, L. R. A., 1918C, 497, Ann. Cas., 1918B, 461;
 
 Duplex Printing Press Co.
 
 v.
 
 Deering,
 
 254 U. S., 443, 41 Sup. Ct., 172, 65 L. Ed., 349, 16 A. L. R., 196.
 

 Surely the rights of an employer to the fruits of his contract with his employes are no more sacred than the rights of a wife to the consortium and support of her lawful'husband.
 

 . An unbroken line of authorities establishes the proposition that equity has jurisdiction in a proper case to restrain trespass. Jurisdiction in this class of cases is ordinarily confined to those cases where, from the nature of the property affected,
 
 *242
 
 or because of the frequent repetition of the trespass, the injury sustained is not susceptible of remedial damages. This principle has peculiar analogy to the instant case..
 

 Much was said in. argument by counsel for Miss Snedaker to the effect that this is a mere personal right belonging to the wife. Even so, many cases have been decided to the effect that a mere personal right is within the protection of a court of equity by injunction, and I can see no reason why the courts might not properly give relief in a case involving a breach of the marriage contract/ even though it should be placed solely upon the personal right.
 

 Before entering upon a discussion of the juris diction of equity over the infringement of personal rights, it should be stated that there is a clear legal right and a property right, which, by reason of the insolvency of the defendant in this case, renders a suit for damages wholly inadequate as a remedy? We have reached the point in Ohio where there is one divorce foT every five marriages, and it cannot longer be claimed that the statutes relating to marriage and divorce furnish that “ample and adequate” remedy which the majority opinion of the court in this case claims. If, as seems to be feared by the majority, the trial court will have some difficulty in enforcing the order entered in this case, that difficulty need give this court no immediate concern. I anticipate, however, that the defendant would-not lightly disobey the injunction, if it is permitted to stand. The commercial interests of the state of Ohio should not be the only concern of the courts of
 
 *243
 
 the state. All property rights and interests, even though growing out of the marriage relation, are entitled to the care and consideration of our courts quite as much as those Other interests growing out of commercialism. ' -
 

 In its last analysis, this controversy turns upon the simple inquiry whether there is an adequate remedy at law. It is stated in the majority opinion that our statutes make “ample and adequate provision.” It is not quite clear which Code sections are referred to. If the court refers to the divorce and alimony statutes, it may. be answered that a divorce would only facilitate the relations between the husband and the defendant in this ease, inasmuch as the petition recites, and the decree of the court finding the same to be true, establishes, that the wife, on discovering her husband’s state of mind, “tried, is still trying, and will continue to try to reason with him, and to induce him to have nothing more to do with said defendant, and has forbade the said defendant to have anything to do with her said husband,
 
 but the. defendant has informed plaintiff that she will not desist from hawing to do with plaintiff’s said husband.”
 
 Instead of this section affording a remedy for the wife, it merely affords an avenue of satisfaction to the defendant. If the court reers to the alimony sections, it may be answered that alimony is never a satisfactory and adequate substitute for support and consortium. If the majority refer to those statutes which declare nonsupport of children to be a criminal offense, it may be answered that it is of no avail to the wife and infant children of this recreant husband that
 
 *244
 
 he might be placed in jail, or even in the penitentiary, because of his failure to furnish a proper support. It may be further answered that those statutes furnish no relief to the wife, because nonsupport of the wife, unless she is in a pregnant condition, is not punishable as a criminal
 
 offense.
 

 As previously stated, all this portion of the discussion is entirely beside the question. This is not an action to compel the husband to discharge his marital duties, but, on the contrary, an action to compel the defendant to desist from her interference, and to enjoin her from continuing to induce the husband to breach the marriage contract.
 

 It is claimed in argument that this error proceeding is prosecuted by Miss Snedaker to remove from her the alleged unjust stigma of. the judgment of the trial court. The answer to that proposition is that the stigma upon her character arises out of the finding of facts against her by the trial court, and hér reputation will suffer none the less by reason of the majority of this court finding as a technical legal proposition that the wife has in this case mistaken her remedy. The failure of Miss Snedaker to procure a bill of exceptions and to reverse the adjudication of fact, and her attempt only to have this court declare a technical rule of law, that the finding of fact does not support the judgment of law which has been entered, affords no relief to her character. It cannot be lightly assumed that she seeks only vindication at the hands of this court. It seems quite conclusive, on the contrary, that her real purpose is to be relieved from the inhibition of associating with plaintiff’s husband.
 

 
 *245
 
 The action at law having been determined against defendant, and a judgment entered thereon, the logical position of the defendant in this case, and therefore the logical position of the majority of this court, is that she is entitled to continue her course unrestrained and unhindered, and that she is only subject to further and repeated suits for damages, and to suffer repeated judgments which she will be unable to pay. -
 

 ■ Having so far discussed the legal questions involved as being based upon property rights, I do not wish to be understood as conceding that equitable jurisdiction will' lie only to protect property rights. In a. great number of cases American courts have exercised the extraordinary writ of injunction to protect,purely personal rights. Without quoting, or even citing, the long list of cases in which this principle has been declared, it is sufficient to say that" the cases relate to the education and custody of children, privacy, and reputation, the publication or exhibition of photographs, the publication of private correspondence, the security of the person, the protection of health and comfort, and -many other phases of purely personal right. The case of
 
 Ex parte Warfield,
 
 40 Tex. Cr. R., 413, 50 S. W., 933, 76 Am. St. Rep., 724, decided by the Court of Criminal Appeals of Texas, is quite similar in its facts to the case at bar. It was an action for the writ of
 
 habeas corpus
 
 to secure the release of Warfield, who had been sent to jail for contempt for violating an injunction order very similar to the order in the ease at bar. The injunction order prohibited Warfield from continuing his attentions to the
 
 *246
 
 wife of one Morris. The court did not treat the injunction order as a finality, but discussed the matter from the standpoint that the injunction order would have been a nullity, unless the court making the order had equitable jurisdiction to make it. In discussing the matter, the court stated (that the marriage contract gave rise to property rights, Jout further stated that, even though the .right should be, considered a personal one, equitable process might be invoked.
 

 In the case of
 
 Stark
 
 v.
 
 Hamilton,
 
 149 Ga., 227, 99 S. E., 861, 5 A. L. R., 1041, the court held that a father might obtain an injunction to restrain the attempts of a person to debauch his minor child, and to induce her to abandon her parental abode and live in a state of adultery. In concluding the opinion, the court, all justices concurring, made the following pronouncement:
 

 “It is difficult to understand why injunctive protection of a mere property right should be placed above similar protection from the continual humiliation of the father and the reputation of the family. In some instances the former may be adequately compensated in damages, but the latter is irreparable; for no mere money consideration could restore the good name and reputation of the family, or palliate the humiliation of the father for the continual debauching of his daughter.”
 

 In fairness to the majority of this court and to counsel for Miss Snedaker, it must be stated that they do not contend that Miss Snedaker has a legal right to alienate the affections of Mr. King, or to solicit his continued attentions to her, or to impose her attentions upon him, but the conten
 
 *247
 
 tion is that the only .recourse of the wife against the vampire is a judgment for damages, which she is unable and unwilling to pay, and that the vampire is immune from equitable process, because the statutes give the wife certain legal recourse against the husband, which the majority of this court deem ample and adequate.